SELECTMEN OF LANCASTER & another[1] *vs.* AMEDIO DeFELICE & another.

Worcester. February 7, 1967. — March 8, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning,* Side yard. *Building Laws. Structure. Permit.*

Under a zoning by-law requiring that in residential districts there should be provided "at each side of every dwelling" a side yard of not less than fifteen feet "in clear width between the side of the house and the side lot line," that side yards should be at all times "clear from the front to the rear lines of the house," that there should be provided a back yard extending "the full width of the lot" between the rear line of the

---

[1] The town's building inspector. The bill was brought pursuant to a writ of mandamus directing the building inspector and the selectmen to initiate such a bill.

house and the rear lot line, and that the back yard could contain "accessory buildings," it was held that the word "house" referred to the principal house on each parcel and not to accessory buildings, and that the fifteen foot "clear width" requirement for side yards applied only to the areas directly at the sides of the house. [207]

An extension of a cement platform and a concrete retaining wall with a door in it leading to a small storage space under the platform constituted in the aggregate a "structure" for construction of which a building permit was required under the municipal building by-law; its construction was not mere "ordinary repairs" for which no permit was required. [208]

BILL IN EQUITY filed in the Superior Court on July 3, 1962.

The suit was heard by *Meagher*, J.

*Henry P. Grady* for the defendants.

No argument or brief for the plaintiffs.

CUTTER, J. By this bill in equity the selectmen and the building inspector of Lancaster seek to enforce the town's zoning by-law against DeFelice and his wife. The trial judge found that there was a violation. The DeFelices now appeal from a final decree directing the removal of a low structure mentioned later in this opinion. There is a report of material facts and the evidence is reported.

The DeFelices and one Kathleen Smith owned adjacent parcels of land, each having its westerly boundary on Spectacle Pond in Lancaster. The northerly boundary of part of the Smith land (8.4 acres) was the southerly boundary of the DeFelice land (about 60,000 square feet). The DeFelices built the low structure in dispute within about a foot of the Smith land at a point east of the extension of the line of the easterly side of the DeFelice dwelling. The DeFelice house was in open country not close to any street. From the testimony and exhibits we conclude that the house faced the pond. This low structure thus was in the backyard of the DeFelice parcel.

Streets lay in an easterly direction from both parcels but at precisely what distance the record does not show. Access to the DeFelice land appears to have been over a right of way leading to the Leominster-Harvard Road. The DeFelice house (measuring from a scale plan) appears to be, at its most southerly point, over eighty feet from the

Smith land. A blacktop drive and automobile parking area (apparently wholly on the DeFelice land) begin some forty feet east of the easterly side of the dwelling.

The ground near the disputed structure falls off fairly sharply from east to west toward the pond. The structure is an extension toward the Smith land of a cement platform (at or near ground level on its easterly side) with a concrete retaining wall on its westerly side toward the pond. In the west face of this wall near the boundary there is a garage door leading to a small storage space under the platform. The structure was erected without a permit. A former building inspector, when consulted, considered a permit unnecessary.

1. The significant provisions of the zoning by-law (§ III — Area Regulations) read in part, "3.4 Side Yards. In residential districts there shall be provided *at each side of every dwelling* a side yard of not less than . . . [fifteen] feet in clear width *between the side of the house and the side lot line.* Side yards shall be at all times clear *from the front to the rear lines of the house.* 3.5 Back Yards. In residential districts there shall be provided a back yard extending *the full width of the lot* and not less than thirty . . . feet in depth between the rear line of the house and the rear lot line. *A back yard may contain accessory buildings* covering not more than thirty per cent . . . of the back yard area" (emphasis supplied). The trial judge applied par. 3.4 as requiring that side yards be clear for a width of fifteen feet along each side boundary for the whole depth of the parcel.

We agree with the DeFelices (who in this respect agree with the selectmen and the town counsel) that par. 3.4 in explicit terms (see the language italicized above) requires side yards to be clear only with respect to the limited areas directly at the sides of the house on each parcel. We interpret "house" to refer to the principal house on each parcel and not to "accessory buildings." The disputed low structure is not in an area within extensions of the line of the sides of the DeFelice dwelling in any direction. The

structure does not violate par. 3.4. It does not appear to occupy more than thirty per cent of the area east of the easterly line of the dwelling and is thus within no prohibition expressed in par. 3.5.[2]

2. The trial judge found that no building permit for the structure was issued. We cannot say that this finding was plainly wrong. We hold that a permit was required by § III (Preliminary Requirements and Permits) of the town's building by-law.[3] The platform, retaining wall, and door in dispute in the aggregate constituted a structure. Its construction amounted to more than "[o]rdinary repairs" under par. 3.2.

3. There is no suggestion that a permit would not have been granted if the building inspector had believed one to be necessary. The structure is allowed by the zoning by-law. It appears from photographs to be appropriate to this residential area and to involve no health, safety, or fire hazard.

From all that appears, the proper town authorities should now be willing to issue a permit. That, however, is a matter for them to decide in the first instance in the light of all relevant considerations, some of which may not be before us. There is, however, no reason for requiring the structure to be demolished, unless, upon reasonably prompt application, a permit is properly denied for reasons other than the erroneous interpretation (now set aside) of par. 3.4 of the zoning by-law. See *Williams* v. *Inspector of Bldgs. of Belmont,* 341 Mass. 188, 192–194.

---

[2] Even if the east side of the house were to be regarded as its front, there would be no violation of the zoning by-law (§ 3.3) which prohibits new "accessory buildings" within fifty feet from the center line of any street under sixty feet wide. No street has been shown to be within fifty feet of the structure.

[3] Section III reads in part, "3.1 No person shall construct, alter, or repair any building or *structure*, except as provided in paragraph 2 of this section, without first obtaining a permit from the Inspector of Buildings. 3.2 *Ordinary repairs* to a building may be made without a permit provided such repairs do not include the cutting away of any wall, in whole or in part, or provided the alteration does not materially affect the outside appearance of the structure, and provided the cost does not exceed five hundred dollars" (emphasis supplied).

4. The final decree is reversed. If the DeFelices shall apply for and be granted a building permit for the disputed structure within ninety days after the date of the rescript, the bill shall be dismissed. Otherwise the case is to stand in the Superior Court for further proceedings consistent with this opinion.

*So ordered.*