TOWN OF MARBLEHEAD *vs.* JOHN A. DEERY, JR.

Essex. December 4, 1969. — December 24, 1969.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Zoning*, Creation of nonconformity, Dimensional requirements, Enforcement. *Equity Jurisdiction*, Enforcement of zoning.

Under a zoning by-law providing that in front yards in all residence districts no building should be maintained within twenty feet of any street line, the front yard of a house on land abutting on only one way lay in the direction of the closest point of the way. [536]

Where it appeared that a parcel of land having on it an old dwelling set back from an abutting avenue in conformity to the zoning by-law of the town was divided into five lots, of which two fronted on the avenue and a lot having the dwelling on it and two other lots fronted on a new way, from which the dwelling was not adequately set back, that a plan showing such subdivision was approved by the town's board of survey under G. L. c, 41, §§ 73–81, and that thereafter the two lots fronting on the avenue were conveyed, it was held that the subdivision changed the previous conforming use of the dwelling to an unprotected nonconforming use. [537]

In a suit in equity by a town to enforce compliance by the defendant with the front yard provision of the town's zoning by-law by ordering removal of a portion of the defendant's dwelling located too close to a way on which his dwelling fronted, such mandatory injunctive relief should be denied on recognized equitable principles in the circumstances where it appeared among other matters that in the five years following approval of a subdivision plan showing the way and the defendant's dwelling lot and four other lots then owned by him by the town's board of survey he had made substantial expenditures on his dwelling and on the way in reliance on such approval, that by construction of the way and conveyances he was in no position thereafter to eliminate the nonconformity, that substantial hardship and expense would be imposed upon him by requiring compliance, and that no significant injury to any interest of the plaintiff was involved. [537–538]

BILL IN EQUITY filed in the Superior Court on January 13, 1966.

The suit was heard by *Macauley*, J.

*Paul L. Lausier,* Town Counsel, for the plaintiff, submitted a brief.

*Wesley E. Bevins, Jr.,* for the Marblehead Neck Improvement Association, Inc., amicus curiae, submitted a brief.

*James T. Ronan* for the defendant.

CUTTER, J. The town by its bill in equity seeks to compel Deery to remove the portion of his dwelling within twenty feet of Sean's Way, Marblehead. After hearing, the trial judge made a report of material facts upon the basis of which the facts are stated below, except as otherwise indicated. By final decree, the bill was dismissed. The town appealed. The evidence, largely undisputed, is reported.[1]

In 1959 Deery owned land on the south side of Harbor Avenue on Marblehead Neck. That land is part of the area shown on the accompanying sketch, which simplifies a Land Court plan in evidence.[2] On Deery's land there was a large dwelling built in 1887. The house in 1959 was approached by a double curved driveway from Harbor Avenue with a branch extending around the east side of the house to a cul-de-sac or turnaround a short distance southeast of the house. This in part, at least, appears to have followed a twenty foot right of way mentioned in earlier deeds of Deery's land.

In June, 1959, Deery submitted to the Marblehead selectmen as the town board of survey (see G. L. c. 41, § 73, as amended through St. 1953, c. 674, § 8[3]) a petition accom-

---

[1] A helpful brief, as amicus curiae, has been filed, by leave of court, in behalf of the Marblehead Neck Improvement Association, Inc. which is concerned about the possible future effect, as a precedent concerning the zoning by-law, of the Superior Court decision in this case. It will be observed that our decision rests wholly upon general equitable considerations arising out of the unusual circumstances disclosed by the record. These probably are unlikely to recur.

[2] The portions of lots 14 and 15, south of the broken line (A–A) on the plan, were not part of the two lots shown on a subdivision plan dated May 27, 1959, appropriately recorded on November 6, 1959, but the inclusion of this relatively small additional area by a plan dated March 11, 1960, recorded on October 21, 1960, does not affect the issues here discussed.

[3] The evidence shows that the population of Marblehead in 1953 exceeded 10,000. Chapter 41, § 81A (as amended through St. 1961, c. 276, § 2), provides that any "town . . . upon attaining a population of . . . [10,000 shall] establish a planning board" under that section. The town in 1926

panied by a plan and profile, seeking approval (c. 41, §§ 74–
81) for the location of a private way, Sean's Way, approxi-
mately in the area shown on the accompanying sketch.
This action was part of Deery's "plan to make a subdivision
of his whole property into five lots" essentially as shown on

created a planning board, but there is no indication that the planning board
performed any functions which affect the decision of this case or whether it
constitutes a board which meets the requirements of § 81A. Exhibits (notices
on file in the Land Court and the Registry of Deeds) indicate that Marble-
head thus far has failed to accept the provisions of G. L. c. 41, §§ 81K to
81GG, and still attempts to operate in such matters through a board of
survey.

the sketch. Lot 11 had been shown on an earlier Land Court plan with a lot 10 comprising most of the balance of the land shown on the sketch plan (but not including the strip, south of broken line A–A, see fn. 2). Under the new plan lots 11 and 12 were to have frontage on Harbor Avenue, and new lots 13 (containing the old dwelling), 14, and 15 were to have frontage only on Sean's Way. After notice and hearing, the five members of the board of survey on July 6, 1960, indorsed their approval on the plan and profile, subject to conditions[4] (not here material) with which Deery complied.

"The Land Court, as early as October 21, 1960, issued five new separate certificates of title to the owners of lots in the approved subdivision incorporating a plan showing . . . 'Sean's Way' as it was approved by the [b]oard of [s]urvey. Since then dwellings have been constructed on [l]ots 11 and 12 . . . . The only access now to . . . [Deery's] dwelling . . . is by 'Sean's Way.' The former front entrance of the . . . house . . . has been blocked off by the conveyances and construction of the dwellings on" lots 11 and 12. The evidence shows that houses were built on lots 11, 12, and 15 in 1960, 1962, and 1964, respectively.

The Marblehead zoning by-law provides (§ 8) that in front yards in all residence districts, "no building shall be . . . maintained within 20 feet of any street line" (with a proviso not here pertinent). In a limited single residence district like that in which Deery's land lies, "[t]here shall be . . . 15 feet of clear width between the side line of each lot and every building thereon." After the approval and construction of Sean's Way, the east end of Deery's house is 8.55 feet from the westerly boundary of the way.

After the approval of Sean's Way and the filing of the subdivision plan on October 21, 1960, Deery did work in the portion of the east end of his house within twenty feet of Sean's Way. Photographs of the house show this portion of the house to be substantial. It contains, among other

[4] One condition required Deery to file a $3,000 bond. On January 10, 1962, part of this was released.

areas, the kitchen, laundry, and a small work room, and plastered bedrooms on the second floor. The evidence shows that it would cost at least $8,000 to $10,000 to remove the portion in dispute. The town engineer testified that he never objected, after the approval of Sean's Way, to providing sewer and other services in Sean's Way. See G. L. c. 41, § 77. The building inspector testified that the location of the dwelling in relation to the way would not affect traffic on the way. There was no suggestion in evidence of any town objection to work done by Deery after 1960 inside the east end of his house, or that the presence of the house 8.55 feet from the west side of the way caused, or would cause, any public problem or nuisance. The town's objection appears to be only that there is a technical violation of the zoning by-law.

1. The town now contends that the maintenance of the house 8.55 feet from Sean's Way does not comply with the front yard requirements of the by-law. The contention was first made on August 17, 1965, by a notice to Deery from the building inspector. The trial judge dealt with the town's contention by deciding that the main entrance of the house is now on its south side and that the area between the house and Sean's Way on that side of the house, more than twenty feet in depth, now constitutes the front yard of the house. He also treated the maintenance of the house at its present location, where it has been since before the first Marblehead zoning by-law adopted in 1928, as a preexisting use not affected by the zoning by-law. The evidence, we think, does not permit either of these conclusions.

We interpret the by-law as intended to treat the front yard of a house as lying in the direction of the closest point of the way on which the owner's land abuts, at least as here where that land abuts on only one way. No special circumstances require application of a different rule in this instance. Cf. *Selectmen of Lancaster v. DeFelice*, 352 Mass. 205, 206–208; *Scott v. Board of Appeal of Wellesley*, ante, 159.

The new subdivision in 1960, the approval of Sean's Way at Deery's request, and the subsequent conveyances of lots 11 and 12 created a new relationship of Deery's dwelling to the neighboring ways, so that the proximity of the house to a new way open to public use (a way within the definition of "street" in the by-law) materially changed the use of the premises to one now not in conformity with the by-law. In 1960 the use of the house was, and for some time had been, in conformity with the by-law. It was not a nonconforming use. It has now become an unprotected nonconforming use. See *Howland* v. *Acting Superintendent of Bldgs. & Inspector of Bldgs. of Cambridge*, 328 Mass. 155, 159–160; *Alley* v. *Building Inspector of Danvers*, 354 Mass. 6, 8.

2. Despite what has been said, the final decree seems to us to be justified upon another ground. There is no suggestion that anyone participating in this confused situation acted otherwise than in good faith. Deery was not represented by counsel until 1965 when he was directed to remove the easterly part of his building. He made from 1960 to 1965 substantial expenditures on his house, and presumably on Sean's Way, in reliance on the 1960 decision of the selectmen acting as a board of survey. He did not have the benefit of planning board consideration or of proceedings under the Subdivision Control Law. See fn. 3, *supra*. The selectmen who acted were the same persons who, under the zoning by-law (§ 16 [f]), could have granted, subject to the standards stated in the by-law, a special permit for a variation in the front and side yard provisions. By road construction and conveyances since 1960, he has ceased to be in a position so to adjust the location of Sean's Way and the character of his subdivision as to avoid violation of the zoning by-law. Although the town is not now estopped to assert the zoning violation by reason of the 1960 conduct of its selectmen and officers (see *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162–163; *Cullen* v. *Building Inspector of No. Attleborough*, 353 Mass. 671, 675), there is, as suggested earlier, no showing of any

public advantage which could result from a rigid and inequitable enforcement of the by-law.

Substantial hardship and expense would be imposed upon Deery, who has greatly changed his position since 1960 in reliance upon the decision of the board of survey. We perceive no significant injury to any interest of the town which could give rise to monetary damages. Although specific relief for the enforcement of zoning provisions ordinarily is to be granted, the unusual combination of circumstances leads us to deny mandatory injunctive relief (see Pomeroy, Eq. Jur. [5th ed.] § 1359a) on recognized equitable principles. See *Saugus* v. *B. Perini & Sons, Inc.* 305 Mass. 403, 407–410. Cf. the somewhat analogous situations discussed in *Mahoney* v. *Board of Appeals of Winchester,* 344 Mass. 598, 601–602, *Lombard* v. *Board of Appeal of Wellesley,* 348 Mass. 788, and *Lapenas* v. *Zoning Bd. of Appeals of Brockton,* 352 Mass. 530, 533–534. There is here involved no property interest requiring application of a rule like the strict rule concerning specific relief against trespasses discussed in *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 109–110. See *Metropolitan Dist. Commn.* v. *Plotnick,* 354 Mass. 1, 3. The situation is more closely analogous to that considered in *Gray* v. *Howell,* 292 Mass. 400, 403–405. See cases collected in *Chesarone* v. *Pinewood Builders, Inc.* 345 Mass. 236, 241.

*Decree affirmed.*