426 Mass. 485 (1998)                485

The 39 Joy Street Condominium Association v. Board of Appeal of Boston.

THE 39 JOY STREET CONDOMINIUM ASSOCIATION & others[1] *vs.*
BOARD OF APPEAL OF BOSTON & another.[2]

Suffolk. December 8, 1997. - January 15, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Civil,* Standing. *Condominiums,* By-laws, Master deed. *Zoning,* Variance.

The owner of a residential condominium unit had standing to seek a variance
to change the use of his unit to a commercial unit, where the master deed
and condominium by-laws contained no prohibition; moreover, where the
master deed provided for the commercial use of one unit in the building,
the owner had an additional basis to assert standing. [487-488]

A Superior Court judge's findings supported his conclusions that the owner of
a residential condominium unit had not demonstrated that he would be
denied the reasonable use of his property or would undergo substantial
hardship if he were denied a variance for the commercial use of his
property, and the judge correctly entered a judgment annulling the decision
of the board of appeal granting the variance. [488-490]

CIVIL ACTION commenced in the Superior Court Department on
February 9, 1995.

The case was heard by *Charles F. Barrett,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Edward J. Lonergan (Emanuel N. Bardanis* with him) for
Edward Ciancarelli.

*Harvey S. Shapiro* for the plaintiffs.

LYNCH, J. This appeal arises from a decision of a Superior
Court judge annulling the grant of a variance by the board of
appeal of Boston (board). The variance, granted by the board to
the defendant Ciancarelli on January 10, 1995, permitted him to

---

[1]Marisa Fratini, Paula Becker, Jennifer Slack, individually and as they
constitute the board of managers of The 39 Joy Street Condominium Association; Sara Arrand and James Mahar, individually.

[2]Edward Ciancarelli, individually and as trustee of the Ciancarelli Realty
Trust.

operate a beauty salon on the ground floor and basement of a four-floor condominium building located in the Beacon Hill section of Boston, a neighborhood zoned for residential use only. The plaintiffs, consisting of the condominium association's board of managers and the residents, appealed to the Superior Court, claiming that (1) Ciancarelli did not obtain the plaintiffs' prior consent to seek the variance and thus lacked standing before the board; and (2) the board exceeded its authority in granting the variance. On July 31, 1996, following a trial de novo, the judge set aside the board's decision on both grounds. Ciancarelli appeals from the judge's decision. We transferred the case here on our own motion and now affirm.

1. *Facts.* The judge made detailed factual findings, which we now recite in summary fashion. The condominium building at issue is a four-story complex known as 39 Joy Street. It is located on Beacon Hill's north slope and was constructed in 1905 pursuant to a building permit authorizing the construction of a tenement house for three families and one office to be located on the ground floor. The ground floor and the basement, collectively known as Unit C, contain approximately 490 square feet and 390 square feet respectively. The ground floor has a facade of wood construction and a large plate glass window which does not open. Outside the building there is a recessed stoop which services the entry to Unit C exclusively. The complex has a separate entry for the residential units. The basement of Unit C is unfinished and contains an electrical service box, two boilers, and various exposed utility lines. The building's other three units, one per floor, each contain 750 square feet.

Since the building's construction, Unit C has been used for various commercial purposes. The subsequently enacted zoning ordinance of the city of Boston (city) allowed only for residential use of the building.[3] In 1986, the building was converted to condominium units. The master deed provided that the building would contain three residential units and one commercial unit. At that time, Unit C's previous commercial occupant left, leaving the unit completely vacant until Ciancarelli

---

[3]Because the prior commercial use of Unit C predated the zoning bylaws, the city of Boston (city) deemed it a "non-conforming use" and accordingly allowed the unit to continue to be used in this manner until the use ended. See Boston Zoning Code, art. 9, § 9-3.

purchased it from the city in May, 1994, for $70,000.[4] At that time, Ciancarelli was operating a beauty salon located in a building housing several small businesses on nearby Myrtle Street. Ciancarelli then received a use variance from the board permitting commercial use in Unit C, spent $30,000 renovating the ground floor, and moved his beauty salon there in September, 1995.

2. *Standing*. Ciancarelli first claims that the judge erred when he concluded that, in order to have standing to appeal to the board, Ciancarelli needed the plaintiffs' prior consent. A person's ownership of a condominium unit includes "an exclusive fee interest in [the] individual unit" in which "possession and control . . . is reserved to the unit owner." *Golub* v. *Milpo, Inc.*, 402 Mass. 397, 400, 401 (1988), citing G. L. c. 183A, §§ 3-5. An owner's power over his unit is subject only to the limitations set forth in the master deed and the condominium bylaws. G. L. c. 183A, § 4. See *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. 442, 452 (1994) (noting master deed prescribed "the rules of the game"); *McEneaney* v. *Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573, 577 (1995). Condominium unit ownership also includes "an undivided interest with all other unit owners in the condominium's common areas and facilities," *Golub* v. *Milpo, Inc., supra* at 400, over which entities like the plaintiff board of managers are "empowered by statute '[t]o conduct litigation.' " *Id.* at 401, quoting G. L. c. 183A, § 10 (*b*) (4).

In the particular circumstances presented in this case, Ciancarelli had standing to seek a variance. It is well settled that an individual may independently seek a variance with respect to property he owns exclusively. G. L. c. 40A, § 10. Ciancarelli sought a variance to alter the use of his unit alone — property in which he has an "exclusive fee interest." *Golub* v. *Milpo, Inc., supra* at 400. Its potential effect on the building's common area was negligible.[5] Therefore, Ciancarelli's ability to seek a variance is subject only to the provisions of the master deed and

---

[4]The city had previously taken title to Unit C for the previous owner's failure to pay taxes.

[5]We are mindful of the agreed fact that, "[i]n order to enter Unit C through the primary mode of access on Joy Street, an individual must cross over an exterior step and stoop, which constitute part of the common area . . . but which serves Unit C exclusively." Given the judge's findings that (1) the condominium's other residents have a separate entrance apart from Unit C; (2) Ciancarelli has only ten customers daily; and (3) Ciancarelli receives no

the condominium bylaws. Neither prohibits him from seeking a variance absent the plaintiffs' consent or from using the unit commercially. Indeed, the judge found that the master deed, which was recorded in 1986, provided for "one (1) commercial unit" in the building. This express endorsement of Unit C's commercial use, together with the negligible effect on the common areas, bestows on Ciancarelli independent standing to seek the variance.[6]

3. *The variance.* Ciancarelli next claims that the judge erred in annulling the board's grant of the variance. In reviewing the board's decision, the judge "is required to hear the matter de novo and determine the legal validity of the decision of the board upon the facts found by him." *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 295 (1972). See generally *Devine* v. *Zoning Bd. of Appeals of Lynn*, 332 Mass. 319, 321 (1955). We must accept the judge's findings of fact unless they are clearly erroneous, *Broderick* v. *Board of Appeal of Boston*, 361 Mass. 472, 477, 478 (1972), but we are independently to "determine[] what decision the law requires upon the facts found." *Bicknell Realty Co.* v. *Board of Appeal of Boston*, 330 Mass. 676, 679 (1953). Furthermore, the validity of the board's decision is determined on the basis of the facts found by the judge. See *id.*; *Kirkwood* v. *Board of Appeals of Rockport*, 17 Mass. App. Ct. 423, 426-427 (1984). The burden in such an appeal is on the person seeking the variance. See *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 10 (1981); *Marr* v. *Back Bay Architectural Comm'n*, 23 Mass. App. Ct. 679, 682 (1987).

The grant of a variance to Ciancarelli is governed by St. 1965, c. 665, § 9, and the Boston Zoning Code. Pursuant to § 7-3 of the Boston Zoning Code, a variance may be granted only where:

deliveries at the salon, Unit C's use of this small portion of the common area does not "hinder[] or encroach[] upon the lawful rights of other unit owners." See G. L. c. 183A, § 5 (*d*).

[6]In reaching this conclusion, we recognize that condominium ownership involves "joint sovereignty." See *Woodvale Condominium Trust* v. *Scheff*, 27 Mass. App. Ct. 530, 533 (1989). That is, due to the "sharing, often close, of physical space," an owner has a greater interest as to what goes on within the confines of neighboring units than he otherwise might have in separate, privately owned property. See *id.* We are confident, however, that the provisions of G. L. c. 40A, allowing neighbors to challenge the granting of variances before the board, adequately protects their interests. See G. L. c. 40A, § 10.

"(a) . . . there are special circumstances or conditions, fully described in the findings . . . which . . . are peculiar to such land or structure but not the neighborhood . . . such that the application of the provisions of this code would deprive the appellant of the reasonable use of such land or structure;

"(b) . . . for reasons of practical difficulty and demonstrable and substantial hardship fully described in the findings, the granting of the variance is necessary for the reasonable use of the land or structure and . . . the variance . . . is the minimum variance that will accomplish this purpose; [and]

"(c) . . . the granting of the variance will be in harmony with the general purpose and intent of this code, and will not be injurious to the neighborhood . . . ."

The grant of a variance is proper only where there are findings with respect to all of these requirements. *Warren* v. *Zoning Bd. of Appeals of Amherst, supra* at 9-10. We also recognize that "[n]o person has a legal right to a variance and they are to be granted sparingly." *Broderick* v. *Board of Appeal of Boston, supra* at 479, quoting *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55, 61 (1971).

In the present case, the judge's findings form a sufficient basis for denying Ciancarelli's request for a variance.[7] First, his findings show that denying the variance would pose no "substantial hardship" to Ciancarelli. With respect to Unit C's small size, there was evidence that the ground floor alone had more than sufficient living space to comply with code requirements for residential housing regarding natural light, ventilation, and size.[8] That Ciancarelli may have to seek dimensional variances for a residential use does not, in our view, alter this

---

[7]The defendant does not argue that any of the judge's findings are clearly erroneous.

[8]The judge found that "[t]he unfinished basement space is of restricted use because of its size [390 square feet] and the presence of an electrical service box and two boilers which are common elements of the entire condominium." He also cited the basement's "limited ceiling height" and "exposed and intrusive utility lines for gas, water and sewer" in concluding that the viability of using Unit C residentially must depend on examination of the ground floor alone.

conclusion. Compare *DiRico* v. *Board of Appeals of Quincy*, 341 Mass. 607, 610 (1961) (denying variance for commercial use even where "structure could obviously be more easily converted to an office building than it could to a dwelling"), with *Rodenstein* v. *Board of Appeal of Boston*, 337 Mass. 333, 335, 336 (1958) (variance for parking lot allowed where parcel was not "suitable for development and enjoyment as residential property" because "land was largely rock formation"), and *Cavanaugh* v. *DiFlumera*, 9 Mass. App. Ct. 396, 402 (1980) (variance allowed where "it was not economically feasible or likely that the locus would be developed in the future for a use permitted by the zoning ordinance or by-law"). Likewise, Unit C's "store front facade" does not necessitate granting a variance because, as the judge found, a number of buildings in the neighborhood with similar facades were converted to and used for residential purposes despite their commercial appearance. Finally, the judge determined that the estimated cost of renovating the ground floor for residential purposes ($30,000 to $60,000 depending on the extent and quality of the renovations) was insufficient to constitute a substantial hardship. We note additionally that "[f]inancial hardship to the owner alone is not sufficient to establish 'substantial hardship' and thereby justify a variance." *McNeely* v. *Board of Appeal of Boston*, 358 Mass. 94, 101 (1970), citing *Bicknell* v. *Board of Appeal of Boston*, *supra* at 681.

We also agree with the judge's conclusion that, even if restricting Unit C to residential use constitutes a substantial hardship, no variance was warranted because Ciancarelli failed to meet another requirement of § 7-3. Specifically, the judge found no evidence that the size, "store front facade," and renovation costs were "peculiar to . . . Unit C, but not to the neighborhood," as required under § 7-3 (a). To the contrary, his express finding that other buildings with commercial facades had been successfully converted to residences demonstrates that Unit C's characteristics were by no means unique in the Beacon Hill area.

The judgment annulling the board's decision granting the variance is affirmed.

*So ordered.*