ROBERT A. COTTONE & another[1] *vs.* CEDAR LAKE, LLC, & others.[2]

No. 05-P-1302.

Worcester. April 7, 2006. - September 28, 2006.

Present: PERRETTA, TRAINOR, & KATZMANN, JJ.

*Zoning,* Appeal to board of appeals, Person aggrieved, Board of appeals: decision, Conditions, Enforcement. *Practice, Civil,* Zoning appeal, Standing. *Statute,* Construction.

This court concluded that nothing in the clear, unambiguous, and express language of G. L. c. 156C, § 54, which prohibits an unregistered foreign limited liability company from maintaining an action in the courts of the commonwealth, prevented such a company from seeking relief from a local zoning board and then defending an appeal from that action in Superior Court. [466-468]

A Superior Court judge correctly determined that a seven-member local zoning board was properly constituted [468-470] and that a five-to-two vote by the board was sufficient to grant relief from a decision of a building inspector [470-471].

A local zoning board did not act outside the scope of its authority by imposing certain conditions mandating that landowners take specified action within sixty days of the date of the board's decision. [471-473]

CIVIL ACTION commenced in the Superior Court Department on September 30, 2002.

The case was heard by *John S. McCann,* J., on motions for summary judgment.

*Edmond A. Neal, III,* for the plaintiffs.

*Jonathan D. Eichman,* Town Counsel, for town of Sturbridge & another.

*Mark L. Donahue* for Cedar Lake, LLC.

PERRETTA, J. On cross motions for summary judgment on the

---

[1]Denise M. Cottone, Robert's spouse and "co-owner" of the property in issue.

[2]Zoning board of appeals of Sturbridge and the town of Sturbridge.

complaint filed by the plaintiffs, Robert A. and Denise M. Cottone, under G. L. c. 40A, § 17, the judge concluded for reasons he set out in a detailed and comprehensive memorandum of decision that Cedar Lake, LLC (Cedar Lake), a foreign limited liability corporation, had standing to seek a decision of the building inspector; that the seven-member zoning board of appeals of Sturbridge (board) was duly constituted; that the quantum of vote required by the board was a two-thirds majority; and that the board's decision was based on legally tenable grounds.[3] The Cottones appeal, and we affirm the judgment.

1. *The undisputed facts.* When the Cottones obtained a building permit from the building inspector and built a garage and attached deck on their property, Cedar Lake, an abutter of the Cottones, hired an engineer to conduct a perimeter survey. That survey revealed that the garage was approximately four feet from Cedar Lake's boundary line and that the attached deck encroached on its property. Based on this survey, Cedar Lake complained to the building inspector and requested that he enforce the fifteen-foot setback requirement of the zoning by-law. Maintaining that the Cottones' property was not in violation of the zoning by-law, the building inspector declined to give relief to Cedar Lake.[4]

Cedar Lake then filed an appeal from the building inspector's decision to the board. Timely notice of the hearing to be held on Cedar Lake's request for relief was sent to numerous parties.[5] The minutes of that hearing, held on August 14, 2002, establish that the hearing lasted for over two hours and that witnesses on

[3]Although the Cottones' notice of appeal limits itself to the issues of Cedar Lake's standing, the composition of the board, and the sufficiency of the board's vote, they also argue that the decision of the board contained conditions that were beyond its authority to impose. Because the judge considered this claim in his memorandum of decision and Cedar Lake responded to this argument in its brief, we consider it in the interests of judicial economy.

[4]The building inspector's refusal to take action was not perfunctory. Rather, it was based upon a different perimeter survey which led him to conclude that the structure in issue did not violate the setback requirement of the by-law.

[5]As set out in the record of the board's decision, notice was sent to "abutters to the property in question, owners of land directly opposite from the property in question on any private or public street or way, abutters to abutters whose property is located within 300 feet of the property line of the property in question, the planning board, and the planning board of abutting city and towns."

both sides of the controversy were heard. About a month later, on September 11, 2002, five of the seven members of the board voted to grant Cedar Lake relief and ordered that the garage be brought into compliance with the zoning by-law. As the Cottones have removed the deck connected to the garage, the only issue before us concerns the setback requirement of the zoning by-law in respect to the garage.

2. *Cedar Lake's standing.* It is undisputed that Cedar Lake, a limited liability corporation organized under the laws of Connecticut and doing business in this Commonwealth, see G. L. c. 181, § 3 (ownership of land in Massachusetts considered doing business in Massachusetts), was not at the time of this dispute registered with the Secretary of State as required by G. L. c. 156C, § 48. General Laws c. 156C, § 54, inserted by St. 1995, c. 281, § 18, provides in pertinent part that "no action shall be maintained or recovery had by the [unregistered] foreign limited liability company in any of the *courts* of the commonwealth as long as such failure continues," and that an unregistered foreign limited liability company's failure to register "shall not prevent [it] from *defending any action, suit or proceeding in any of the courts* of the commonwealth." (Emphasis added.)

Cedar Lake sought relief from a local zoning board and then defended against this action brought in the Superior Court by the Cottones. There is nothing in the clear, unambiguous, and express language of G. L. c. 156C, § 54, that supports the Cottones' claim that the statute is applicable to administrative proceedings. See *Commonwealth* v. *Brown*, 431 Mass. 772, 775 (2000).

Apparently seeking to avoid the plain language of G. L. c. 156C, § 54, the Cottones argue that Cedar Lake is not a "person aggrieved" within the meaning of that term as used in G. L. c. 40A, §§ 8, 15, and 17. Their reliance upon cases such as *Chongris* v. *Board of Appeals of Andover*, 17 Mass. App. Ct. 999, 999-1000 (1984), and *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 492-493 (1989), is misplaced.

As stated in *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge, supra,* "[i]ndividual or corporate property

owners acquire standing [as a person aggrieved] by asserting a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." In *Chongris* v. *Board of Appeals of Andover, supra,* and *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge, supra,* standing was denied the plaintiffs because their only interest was a "general civic interest" and "public concern." In the present case Cedar Lake has both a private property and legal interest.

In *Save the Bay, Inc.* v. *Department of Pub. Util.,* 366 Mass. 667, 677 n.8 (1975), the court stated: "standing may be limited to those persons who have a specific and substantial interest which may be adversely affected by a decision or order and who, *therefore,* . . . have standing to invoke [the] court's remedial powers" (emphasis added). "[W]hether a party has standing" is to be determined on the basis of the "whole of the proceeding." *Id.* at 672. The Cottones argue that Cedar Lake is not a "person aggrieved" within the meaning of that term as used in G. L. c. 40A, because G. L. c. 156C, § 54, precluded Cedar Lake from proceeding on any necessary appeal to the Superior Court pursuant to G. L. c. 40A, § 17.

We think, as did the judge, that the Cottones' reading of *Save the Bay* is too expansive and fails to give due and correct weight to *Newton* v. *Department of Pub. Util.,* 339 Mass. 535, 544 (1959). As put by the judge in his memorandum of decision:

> "[T]he Cottones misinterpret the scope of the rule in *Save the Bay, Inc.* They would lead this Court to believe that a party is not aggrieved under G. L. c. 40A, § 8 unless it also has standing in all respects before the Superior Court. Further review of this rule and of *Newton* v. *Department of Pub. Util.,* 339 Mass. 535, 544 (1959), from which the rule originates, leads to a far less expansive interpretation. In *Newton,* the Supreme Judicial Court held only that 'standing to seek judicial review under [G. L.] c. 25, § 5' was limited to those persons who 'had an interest sufficient to make it "aggrieved." ' *Newton,* 339 Mass. at 544. The use of the word 'therefore' in the *Save the Bay, Inc.* rule evidences the Court's intent to apply this same rule. *Save the Bay, Inc.,* 366 Mass. 667, 677 n.8 ([S]tanding may be limited to those persons who have a specific

and substantial interest which may be adversely affected by a decision or order and who, *therefore*, . . . have standing to invoke th[e] court's remedial power.) (Emphasis added). Thus, standing at the zoning board of appeals level is limited solely to an analysis of whether the party has a specific and substantial interest, such that they are a 'person aggrieved' for the purposes of both G. L. c. 40A, § 8 and § 17. The effect of G. L. c. 156C, § 54 is, therefore, irrelevant to this analysis."

Based upon this more narrow and accurate reading of *Save the Bay* as well as the undisputed facts that Cedar Lake is a "person aggrieved" within the meaning of G. L. c. 40A, § 8, see *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. at 492-493, and that the Cottones rather than Cedar Lake commenced this action against Cedar Lake pursuant to G. L. c. 40A, § 17, we conclude that Cedar Lake had the requisite standing before the board and is properly before us on the Cottones' appeal.

Whether Cedar Lake would have been precluded by G. L. c. 156C, § 54, from appealing from an adverse ruling pursuant to G. L. c. 40A, § 17, is a question we need not decide and leave to another day. As of now, we decide only that Cedar Lake was a "person aggrieved" under G. L. c. 40A, and that there was nothing in the terms of G. L. c. 156C, § 54, that precluded it from defending against the appeal brought against it in the Superior Court. In short, the Cottones' argument concerning Cedar Lake's standing fails.

3. *The seven-member board.* Cedar Lake's appeal to the board is dated July 3, 2002. At all times pertinent to its appeal,[6] G. L. c. 40A, § 12, inserted by St. 1975, c. 808, § 3, provided, and continues to read, in pertinent part:

> "Zoning . . . by-laws shall provide for a zoning board of appeals, according to the provisions of this section, *unless otherwise provided by charter.* . . . Any board of appeals established *hereunder* shall consist of three or five members who, *unless otherwise provided by charter*, shall

---

[6]The board held a public hearing on Cedar Lake's request for relief on August 14, 2002. After deliberation, five of the seven members of the board voted, on September 11, 2002, to grant Cedar Lake's request.

be appointed . . . for terms of such length and so arranged that the term of one member shall expire each year." (Emphasis added.)

To defeat the conclusion that the seven-member board was established by charter and, therefore, duly constituted, the Cottones focus on the second quoted sentence of G. L. c. 40A, § 12, and rewrite the statute in a manner to accommodate their claim. They argue that use of the "who" in the second quoted sentence of § 12 indicates that the Legislature intended to modify only the mode of appointment of three to five members to a local board rather than to expand membership on the board. Based upon the rules of statutory interpretation, Sturbridge's charter, and Sturbridge's zoning by-laws, we conclude that the seven-member board was duly constituted. Application of the "rule of the last antecedent" to the first sentence of G. L. c. 40A, § 12, leads to the conclusion that the board was established by charter.[7] Our conclusion is also supported by § 4-10 of the Sturbridge Town Charter, as revised, April, 2002, which reads:

"[T]here shall be a Zoning Board of Appeals consisting of seven (7) members. Five (5) members shall be elected by the voters for three year terms such that the term of office of at least one member, but not more than two members, shall expire each year. Two (2) members shall be appointed by the town administrator for three year terms so arranged that the terms of office will not expire in the same year."

See also § 24.07 of the Sturbridge zoning by-laws, as amended, April 30, 2001,[8] and § 2.1 of the board's rules and regulations

---

[7]"The 'rule of the last antecedent' holds that 'qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote.' " *Russell* v. *Boston Wyman, Inc.*, 410 Mass. 1005, 1006 (1991), quoting from *United States* v. *Ven-Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir. 1985).

[8]Section 24.07, as amended, reads:

"There is hereby established a Zoning Board of Appeals of five (5) elected members and two (2) members to be appointed by the Town Administrator subject to the confirmation by the Board of Selectmen, as provided in M.G.L., Ch. 40A, which shall act on all matters within

governing comprehensive permits, as adopted on May 22, 2002, and revised on June 12, 2002.[9]

For the above discussed reasons, we conclude that the judge correctly rejected the Cottones' reading of G. L. c. 40A, § 12, and determined that the seven-member board was properly constituted.

4. *The required quantum of vote.* Five of the seven board members voted to grant Cedar Lake's requested relief while two members voted to deny relief. The Cottones argue that a four-fifths vote by a seven-member board is the minimum vote allowed by statute to reverse any order or decision of a building inspector. They arrive at this quantum by noting that G. L. c. 40A, § 15, amended by St. 1987, c. 498, § 3, requires four votes of a five-member board "to reverse any order or decision of any administrative official under [chapter 40A] or to effect any variance in the application of any . . . by-law." It then makes a fractional analysis to arrive at the claimed four-fifths quantum for the seven-member board to reverse a decision of the building inspector.

There is nothing in G. L. c. 40A that requires a four-fifths vote for a board, committee, or council composed of more than five members to take action. Nor do we see anything in the legislative history of chapter 40A to cause us to depart from the well-established rule that "[i]n the absence of statutory restriction the general rule is that a majority of a council or board is a quorum and a majority of the quorum can act." *Duddy* v. *Mankewich*, 66 Mass. App. Ct. 789, 792 (2006), quoting from *Merrill* v. *Lowell*, 236 Mass. 463, 467 (1920). See *Clark* v. *City Council of Waltham*, 328 Mass. 40, 41 (1951). As put by the judge in the instant matter, "there is no reason to import a separate and stricter standard, let alone an unprecedented four-fifth requirement, for a seven person zoning board of appeals to reverse the decision of a building inspector." We conclude, as

its jurisdiction under this Bylaw in the manner prescribed by M.G.L., Ch. 40A."

[9]Section 2.1 provides that "Board means the Sturbridge Zoning Board of Appeals (ZBA) established under M.G.L. Chapter 40A, Section 12 and the Charter, Town of Sturbridge, Section 4-10."

did the judge, that a five-to-two majority vote by the seven-member board was sufficient to grant relief to Cedar Lake from the building inspector's ruling.

5. *The board's decision.* As noted in part one of this opinion, *supra*, the Cottones voluntarily removed the deck connected to the garage that intruded upon Cedar Lake's property. The remaining issue now is whether the board acted outside the scope of its authority by imposing the conditions mandating the Cottones to take specified action within sixty days of the date of its decision of September 11, 2002.

Our consideration of this issue begins with the four "conditions, safeguards, and limitations" imposed by the board in granting Cedar Lake's request for relief. Those conditions provide, in pertinent part:

> "1. The . . . garage must be brought into compliance with the Zoning Bylaws, such that no portion of the structure may be within fifteen feet of the property line . . . unless a new property line is established under Condition 3 below.

> "2. The deadline for submittal and approval of a plan of compliance shall be completed by November 12, 2002, after which time the [board] shall impose a non-criminal penalty of fifty dollars, under [§ 24.02 of the zoning by-law]. Each day that such violation continues shall be deemed a separate offense.[10]

> "3. [The Cottones are] free to negotiate with [Cedar Lake] for the acquisition of additional land that can satisfy the setback requirement, based on a new property line; or to pursue other remedies that may be available to [them] to satisfy the . . . setback requirements within the time frame contained above. Such negotiations or remedies must be concluded by November 12, 2002, with proper and sufficient notice to and deliberations of [the board], to avoid the commencement of the non-criminal penalty.

> "4. The collection of the penalty shall be deferred until

---

[10]Section 24.02, par. 3, of the by-law, amended as of April 26, 1999, provides for a noncriminal penalty of fifty dollars for each day the offense continues after receipt of either a verbal or written warning of violation of the provisions of the zoning by-law.

April 9, 2003. Upon execution of the plan, to the satisfaction of the [board] by April 9, 2003, the accrued penalty will be waived."

The Cottones read these provisions as requiring them to bring the garage into compliance with the setback requirement or successfully negotiate with Cedar Lake for the purchase of additional property that would bring the garage into compliance by November 12, 2002. They claim that the board gave them too little time, sixty days, to accomplish any possible alternative to the implicit consequence of moving or destroying the structure. They describe destruction of the structure as a "drastic remedy . . . not generally supported in the case law." See, e.g., *Marblehead* v. *Deery*, 356 Mass. 532, 537-538 (1969); *Kelloway* v. *Board of Appeal of Melrose*, 361 Mass. 249, 256-257 (1972); *Chambers* v. *Building Inspector of Peabody*, 40 Mass. App. Ct. 762, 768-769 (1996). There is nothing in the record to show that the garage has been demolished.

There are several flaws in the Cottones' argument. First, there is nothing in the terms of the board's conditions that required the Cottones to demolish their structure if they were unable to bring it into compliance with the zoning by-law by November 12, 2002. The clear language of the conditions shows that the board required only that the Cottones submit a plan for their compliance by that date. Execution of the plan to the satisfaction of the board was left open to April 9, 2003, on which date any accrued noncriminal penalties would be waived.

Second, even assuming that it is implicit in the board's conditions that the garage will have to be moved or demolished if it is not brought into compliance with the setback requirement, it is well within a board's authority to make such an order. Any judicial reluctance to enforce a demolition order found in the cases relied upon by the Cottones is based upon factors not here shown to exist, namely, the lack of any violation of a private property interest, see *Marblehead* v. *Deery*, *supra*; the availability of money damages for the diminution, if any, in the fair market value of the abutting property, see *Kelloway* v. *Board of Appeal of Melrose*, *supra*; or the use of public funds in the construction of housing for the elderly. See *Chambers* v. *Building Inspector of Peabody*, *supra*.

Third, the procedural history of the dispute and the affidavit submitted by Robert Cottone on the cross-motions for summary judgment establish that the Cottones have yet to comply with any of the board's conditions other than to file for a variance on May 24, 2004. In the meantime, the garage remains standing. We will not go beyond the issues presented on this appeal to speculate about the success of any possible future avenues of relief the Cottones might pursue.

6. *Conclusion.* It follows from what we have said that the judgment allowing the motion for summary judgment brought by Cedar Lake, the board, and the town of Sturbridge, and denying the Cottones' motion for summary judgment, is affirmed, as is the declaration that the board is properly constituted and that a decision of the building inspector can be reversed by a two-thirds majority.

*So ordered.*