70 Mass. App. Ct. 601 (2007)                    601

Steamboat Realty, LLC *v.* Zoning Board of Appeal of Boston.

STEAMBOAT REALTY, LLC, & another[1] *vs.* ZONING BOARD OF APPEAL OF BOSTON & others.[2]

No. 06-P-1544.

Suffolk. September 27, 2007. - October 30, 2007.

Present: MILLS, BROWN, & TRAINOR, JJ.

*Zoning,* Variance.

A Superior Court judge properly affirmed the decision of a city's zoning board of appeal denying an application for a height variance for certain renovations, where the applicant conceded that it did not meet all of the criteria for a variance, the height differential was not de minimis, and the situation did not constitute one of the rare circumstances where a balancing of the equities disfavored strict enforcement of the zoning code. [603-607]

CIVIL ACTION commenced in the Superior Court Department on October 22, 2001.

The case was heard by *Janet L. Sanders,* J.

*Alvin S. Nathanson (Thomas K. Alexander* with him) for the plaintiffs.

*Karen B. Roach,* Assistant Corporation Counsel, for the defendants.

BROWN, J. Steamboat Realty, LLC, and its principal, James Rudolph (collectively, Steamboat) appeal from a decision of the Superior Court affirming the zoning board of appeal of Boston's (board's) denial of an application for a height variance for renovations made to the penthouse unit at 194 Beacon Street.[3] We affirm.

---

[1]James L. Rudolph.

[2]Patrick Ahearn and Ahearn-Schopfer & Assoc., P.C.

[3]A judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), entered on count I of the second amended complaint, brought against the board. Counts II through VII of the complaint, alleging breach of contract, professional negligence, and misrepresentation against the architect on the project,

602            70 Mass. App. Ct. 601 (2007)

Steamboat Realty, LLC *v.* Zoning Board of Appeal of Boston.

A building permit was issued for the renovations based on plans that reflected no increase in the height of the roof line of the building. However, the judge, after a two-day bench trial, found that as built, the roof exceeds the preexisting height by at least four feet. Steamboat contends the actual increase is either zero or less than four feet four inches.[4] When the Back Bay Architectural Commission made Steamboat aware of the height increase by issuing a notice of violation, Steamboat sought a variance for the "as built" plans. The board denied the variance. On appeal to the Superior Court, the judge affirmed the board's decision.

The standard of review we apply to a Superior Court decision reviewing a decision of a board of appeals on a variance is well settled. "We must accept the judge's findings of fact unless they are clearly erroneous, . . . but we are independently to 'determine[] what decision the law requires upon the facts found.' " *39 Joy St. Condominium Assn.* v. *Board of Appeal of Boston,* 426 Mass. 485, 488 (1998) (citations omitted). In making this determination, we are cognizant that "[n]o person has a legal right to a variance and they are to be granted sparingly." *Id.* at 489, quoting from *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 479 (1972). "If variances (or exceptions, unless bestowed fairly in accordance with ascertainable standards properly stated in the zoning provisions) are granted with undue frequency or liberality, and without strict compliance with the prescribed

---

Patrick Ahearn & his firm (see note 2, *supra*), remain to be tried.

[4]The judge concluded that the increase in height was "at least four feet." Steamboat mistakenly ascribes to the judge a finding that the increase in height was four feet, four inches, the amount indicated by the board's architect, and argues that the judge's finding is clearly erroneous because it was based on incompetent evidence from the architect. The argument is without merit. The judge did not rely exclusively on the testimony of the board's architect. Although there was no objection to the affidavit and testimony of the architects offered by either party, the judge acknowledged during closing arguments that measurements taken by the board's architect were of dubious reliability. Steamboat ignores completely that the judge's thorough findings on this issue indicate that she relied on evidence from multiple sources, including surveyors, architects, an abutter, and photographs. Photographs admitted in evidence depict what the judge described as a "box-like structure" that gives every appearance of exceeding the height of the adjacent mirror-image roof line by several feet. Where Steamboat failed to refute adequately this evident increase in height, we cannot fairly say the judge's finding was clearly erroneous.

statutory criteria, zoning regulations can become a matter of administrative whim." *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, 62 (1971).

The criteria applicable to Steamboat's application for a variance, noted in the margin,[5] are conjunctive; Steamboat must meet all of the criteria in order to qualify for a variance. See *39 Joy St. Condominium Assn.* v. *Board of Appeal of Boston*, 426 Mass. at 489; *McGee* v. *Board of Appeal of Boston*, 62 Mass. App. Ct. 930, 931 (2004). Steamboat essentially concedes that it does not meet all of the criteria. It, for example, has identified no structural anomalies particular to the building that would distinguish it from neighboring buildings, particularly its adjacent mirror image, nor has it shown that a variance is necessary for the reasonable use of the land. Further, "an inability to maximize the theoretical potential of a parcel of land is not a hardship within the meaning of the zoning law." *Id*. at 932. Indeed, "[f]inancial hardship to the owner alone is not sufficient to establish 'substantial hardship' and thereby justify a variance."

---

[5]Section 7-3 of the Boston zoning code provides, in pertinent part, that the board may grant a variance "only if it finds that all of the following conditions are met:

"(a) That there are special circumstances or conditions, fully described in the findings, applying to the land or structure for which the variance is sought (such as, but not limited to, the exceptional narrowness, shallowness, or shape of the lot, or exceptional topographical conditions thereof) which circumstances or conditions are peculiar to such land or structure but not the neighborhood, and that said circumstances or conditions are such that the application of the provisions of this code would deprive the appellant of the reasonable use of such land or structure;

"(b) That, for reasons of practical difficulty and demonstrable and substantial hardship fully described in the findings, the granting of the variance is necessary for the reasonable use of the land or structure and that the variance as granted by the Board is the minimum variance that will accomplish this purpose; [and]

"(c) That the granting of the variance will be in harmony with the general purpose and intent of this code, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare[.]

"In determining its findings, the Board of Appeal shall take into account:

"(1) the number of persons residing or working upon such land or in such structure;

*39 Joy Street Condominium Assn.* v. *Board of Appeal of Boston,*
426 Mass. at 490, quoting from *McNeely* v. *Board of Appeal of
Boston,* 358 Mass. 94, 101 (1970). Where an applicant fails to
meet the codified requirements for a variance, "it [is] not enough
to show merely that the [applicant] ha[s] expended a substantial
amount of money . . . or to show that there [are] other
nonconforming buildings in the area, because neither fact
constitute[s] a condition especially affecting the lot in question
but not affecting that zoning district generally." *Warren* v. *Zon-
ing Bd. of Appeals of Amherst,* 383 Mass. 1, 12 (1981).[6] See
*Raia* v. *Board of Appeals of N. Reading,* 4 Mass. App. Ct. 318,
321-322 (1976).

Steamboat's principal argument on appeal is that even assum-
ing a height differential of four feet, four inches (see note 4, *su-
pra*), and notwithstanding that it does not meet the criteria for a
variance, a variance should have been granted on equitable
principles that disfavor enforcing trivial or de minimis zoning
infractions, particularly where the violation was made innocently,
the cost to the applicant is great, and the harm to abutters is
minimal. Steamboat argues that, pursuant to the teachings of
*Capodilupo* v. *Vozzella,* 46 Mass. App. Ct. 224, 227 (1999), "a
balancing of equities after due consideration of all pertinent
facts" is necessary to determine whether this is one of the rare
or exceptional cases where strict enforcement of the zoning
code (here, by ordering restoration of the roof line) should be
considered oppressive, inequitable, and illegal.

In support of its argument, Steamboat contends that it
proceeded in good faith, innocently relying on the advice of a
qualified architect, expended close to $300,000 to complete the
renovations, and would have to spend another $300,000 to restore
the roof line. Moreover, Steamboat points out that the building
is one of the shorter buildings in the neighborhood notwithstand-
ing the fact that, even before the renovation, it exceeded the
current height limitation and therefore constituted a prior

---

"(2) the character and use of adjoining lots and those in the neighbor-
hood; and

"(3) traffic conditions in the neighborhood."

[6]Teachings of decisions under G. L. c. 40A apply to cases arising under the
Boston zoning code. *McGee* v. *Board of Appeal of Boston,* 62 Mass. App. Ct. at
930.

nonconforming use. Steamboat notes that the front roof line is unaltered; the alteration (visible from the back of the building) cannot be seen by a person standing at street level on Beacon Street. Steamboat argues further that at most, the height increase constitutes 6.6 percent of the total height of the building and should be deemed "de minimis." Finally, Steamboat notes the parties' stipulation that Steamboat's most immediate neighbor testified that he does not oppose the plan as built.

There is no order before us requiring Steamboat to return the roof to its previous condition. In the absence of such an order, an argument that principles of equity militate against literal enforcement of the zoning code strikes us as premature. However, in its decision the board concluded that Steamboat had failed to show that "this is a specific case where a literal enforcement of the [Zoning] Act involves a substantial hardship upon the Appellant as well as upon the premises, [or that] the described relief may be granted without substantial detriment to the public good and without substantially derogating from the intent and purpose of the Zoning Act." The parties have briefed the issue, and to the extent restoration of the original roof line is implicit in the variance decision, we exercise our discretion to reach the issue.

There is no merit to Steamboat's argument that the judge failed to balance the equities. In response to Steamboat's argument that equitable principles militate in favor of granting a variance, the judge found that the property at issue is located in the Back Bay section of Boston, where there is great concern in the neighborhood about attempts to build on top of existing structures. The judge noted that the board has consistently taken a tough stance on requests for variances that increase building height. Indeed, the evidence suggests that the board has refused to grant any height variances in the Back Bay neighborhood in the past ten or more years in order to "maintain the architectural integrity of the neighborhood as manifested in original, unbroken roof and cornice lines." This is true even where applicants came in with "clean hands" and claims of personal hardship. In addition, the Boston Redevelopment Authority voted to recommend that the board deny the variance petition because the "[e]xcessive height would not protect the character of the Back Bay Historic District" and the "Neighborhood Association of the Back Bay is opposed" to the petition.

606          70 Mass. App. Ct. 601 (2007)

Steamboat Realty, LLC *v.* Zoning Board of Appeal of Boston.

The judge explained that she saw "nothing arbitrary or capricious with the Board's position. Indeed, it seems completely consistent with the purposes of the Zoning Code, which in part is designed to maintain the architectural integrity of existing buildings and encourage uses appropriate to the neighborhood." We agree.

We noted in *Cottone* v. *Cedar Lake, LLC*, 67 Mass. App. Ct. 464, 472 (2006), that judicial reluctance to enforce a demolition order has been based on factors such as the "lack of any violation of a private property interest, see *Marblehead* v. *Deery*, [356 Mass. 532, 537-538 (1969)]; the availability of money damages for the diminution, if any, in the fair market value of the abutting property, see *Kelloway* v. *Board of Appeal of Melrose*, [361 Mass. 249, 256-257 (1972)]; or the use of public funds in the construction of housing for the elderly. See *Chambers* v. *Building Inspector of Peabody*, [40 Mass. App. Ct. 762, 768-769 (1996)]." In none of the cited cases did the neighborhood, as here, have a well-established interest in preserving the architectural integrity of a historic neighborhood; nor did the zoning board in those cases have a record of furthering such an interest by consistently denying all requests for a height variance. Moreover, the judge here found that the height differential is not de minimis, and our review of the record does not reveal any error in that conclusion. We agree that the photographs, particularly those taken of the rear of the building, are quite telling as to the significance of the addition. We note also that Steamboat does not assert that the building, in its preexisting condition, was inadequate for reasonable uses such that failure to grant an exception could be considered unreasonable. Contrast *Lombard* v. *Board of Appeal of Wellesley*, 348 Mass. 788, 789 (1965) (denial of permit to enlarge garage to accommodate modern automobile, where building would encroach eighteen inches into twenty-foot side yard setback, was arbitrary and capricious).

The factors that led the court to provide equitable relief in *Marblehead* v. *Deery*, *supra*, cited extensively by Steamboat, differ significantly from the facts here. There, the town approved a plan for the subdivision of the defendant's property, including construction of a new road situated less than nine feet from the defendant's home. The defendant changed his position dramatically in reliance on approval of the plan: road construc-

tion and subsequent conveyances changed the defendant's access from the north to the east side of his property, resulting in his violation of the front yard setback requirement and causing him to be unable to relocate the road in such a way as to satisfy the setback requirement. 356 Mass. at 537. He also made significant improvements to the portion of the house that was in violation of the setback requirement. *Ibid.* The court concluded, based on the testimony of town officials, that no showing had been made of any public advantage that could result from a rigid enforcement of the by-law. *Id.* at 537-538.

Here, by contrast, the city did not approve a plan for the renovations that showed there would be an increase in the height of the roof line. In fact, the certificate of appropriateness issued by the Back Bay Architectural Commission was based on the fact that the application showed no increase in height or exterior volume. Nothing the city did contributed to any change of position by Steamboat. Moreover, in *Marblehead* v. *Deery, supra* at 536, the court found that the town's only objection was the technical violation of the zoning by-law. Here, in contrast, the public interest in maintaining the architectural integrity of the neighborhood is implicated.

Given that more is at issue here than the mere technical violation of a height restriction, that the city did not cause Steamboat to change its position, and that public monies are not involved, we discern no error in the judge's decision declining to grant a variance on equitable grounds. While the financial expenditures Steamboat has incurred and may incur in the future[7] are regrettable, they do not supersede the board's interest in preserving the architectural integrity of the neighborhood.

We have not overlooked Steamboat's remaining arguments. "We find nothing in them that requires discussion." *Department of Rev.* v. *Ryan R.*, 62 Mass. App. Ct. 380, 389 (2004), quoting from *Commonwealth* v. *Domanski*, 332 Mass. 66, 78 (1954).

*Judgment affirmed.*

---

[7]Steamboat presented no evidence to support counsel's statement that it would cost $300,000 to restore the building to its preexisting condition.