Wilson, Paul D., J.
This lawsuit is a dispute between a condominium unit owner and the trustees of the condominium concerning certain actions of the unit owner, Plaintiff Atanassova. Plaintiff suggests that the sole issue in dispute is whether she has the right to install a non-structural wall separating the condominium’s living room from its dining room, thus allowing the living room to be used as a third bedroom in what had been a two-bedroom condominium unit. The unit, including the allegedly offending wall, is depicted on the plan that is Exhibit A to the Affidavit of lodita Atanassova, Exhibit 15 in the summary judgment appendix.[1] The Defendant Trustees of Harvard Place Condominium Trust (the ‘Trustees”) assert that the issue is larger than that, also involving the right of Plaintiff to lease her condominium to three independent persons in three separate transactions, a strategy made possible by the conversion of the living room into a third bedroom. When the parties could not resolve their differences, Plaintiff filed this lawsuit, seeking a declaratory judgment that she had a right to install the partition wall, and that the Trustees have no right to levy fines for her alleged violation of the condominium’s Master Deed.
The Trustees have now moved for summary judgment. Plaintiff has opposed that motion, and asked for an entry of summary judgment in her favor. For the reasons set forth below, I will allow the Trustees’ motion for summary judgment.
Background
Plaintiff took title to Unit 303 of the Harvard Place Condominium Trust in Somerville on July 10, 2009. The parties agree that the condominium’s Master Deed says that the condominium consists of 27 one-bedroom and two-bedroom units. See Joint Statement of Material Facts ¶10. In fact, the Master Deed, in section 4, specifically refers to Unit 303 as a two-bedroom unit. The Master Deed, found in Exhibit 3, states in section 12 that it may be amended only by agreement of unit owners holding 75% or more of the beneficial interest in the condominium, as well as a majority of the Trustees.[2]
Plaintiff purchased Unit 303 for investment, and has never occupied that unit. Shortly after she took title, Plaintiff erected the non-structural wall that allowed the living room to be used as a third bedroom. *640 She did so without a building permit, and without seeking the approval of the Trustees, as is required by section 11(C) (d) of the Master Deed, which states that “the owner of a unit may, if the structural wall supports and other structural aspects of the Building are not adversely affected, change the interior partitioning thereof, subject to the approval of the Trustees.” The Trustees became aware of the construction by happenstance, and had the property manager inform Plaintiff of the approval requirement, by way of an e-mail to her sister, who was apparently also her realtor. Her sister’s response foreshadowed this lawsuit: “Regarding the Board approval, this is not a co-op building, and the owners shouldn’t be required to ask the Board for a permission [sic] to sell, rent or modify it. ”[3] Plaintiff later did obtain a building permit, but the Trustees never granted their approval for the change in the interior partitioning of the unit.
Plaintiff then advertised for tenants on Craig’s List, in the following manner: “We advertised the apartment, we advertised the rooms, we advertised any possible way to get tenants.” Deposition of Atanassova, Exhibit 8 (“Plaintiffs Deposition”) at 15. Plaintiffs ads soon yielded three tenants, each of whom leased portions of the unit. On August 13, 2009, Plaintiff rented what the lease called “1 BR, 1 bath, shared kitchen” to Komar Raut for a term beginning on August 16, 2009 and terminating on May 31,2010. Also on August 13, 2009, Plaintiff rented what the lease called “1 BR, shared bathroom and kitchen” to Noemi Lee for a term beginning on September 1, 2009 and terminating on August 31, 2010. Finally, on August 14, 2009, Plaintiff rented what the lease called “1 BR, shared bathroom and kitchen” to Jessica Samanticco for a term beginning on September 1, 2009 and ending on May 31, 2010.[4]
In December 2009, the property manager asked Plaintiff, twice, for a copy of “the lease agreement between you and your tenants.” Exhibit 5 at 32-33. (In the same e-mail, the property manager pointed out that Plaintiff was violating the Master Deed by leasing one of the parking spaces affiliated with Unit 303 to a person who did not reside in the condominium building, a violation that Plaintiff conceded and soon corrected.) In response, Plaintiff sent copies of the three separate leases to the property manager.
In this fashion, the Trustees learned that Plaintiff had signed individual leases with three tenants, commencing and ending at different times, each for only a portion of the condominium unit. Counsel for the Trustees sent Plaintiff a cease-and-desist letter, asserting that Plaintiff had, among other things, violated provisions of the Master Deed prohibiting the rental of a portion of the unit, see Master Deed § 11 (c) (b), as well as the provision banning construction work in the unit without the prior written permission of the Board. Exhibit 5 at 29-31. Plaintiff then had all three tenants execute one lease, dated January 14, 2010, describing the unit as “2 BR, 2 Bath, Kitchen, Living Room,” and running from September 1,2009 (around the time that these three tenants originally took occupancy under their separate leases) until August 31, 2011.[5]
Although the individual leases were thus superseded, the living arrangements of the three tenants did not change. The wall that separated the living room from the dining room remained in place, without the permission of the Trustees. Plaintiff stated in her deposition that the former living room “is not designated to be a bedroom. It is just a room. And whoever rents it, they can use it for whatever purpose they need it.” Plaintiffs Deposition, Exhibit 8, at 23. Plaintiff conceded, however, that “[cjurrently they use this room as a bedroom.” Id. Plaintiff also conceded that her tenants were not related to one another, id. at 25, and, in correspondence with the Trustees’ lawyer, Plaintiffs lawyer has described tenants as “three professional women sharing a single condominium unit.” Exhibit 5 at 2. The 2010 joint lease lists separate telephone numbers for each tenant. See Exhibit 6. Plaintiff has “admitted that separate checks are received” from each of the three tenants each month. Joint Statement of Material Facts ¶30.
Analysis
Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007), citing Augat, Inc. v. Liberty Mutual Ins. Co., 410 Mass. 117, 120 (1991). Here there are no disputes about the facts; the parties differ only about on the implications under the Master Deed of those facts. Indeed, because there are no disputed material facts, Plaintiff, the nonmoving party, has herself asked that summary judgment be entered in her favor, as is allowed by Mass.R.Civ.P. 56(c).
Under Plaintiffs view of this case, the only issue is whether the Trustees have unreasonably withheld their consent to the erection of the non-structural wall separating the living room from the dining room. Plaintiff concedes that she violated the Master Deed by signing leases with three tenants for separate portions of the condominium unit, but that problem, she insists, was resolved when she and her tenants replaced the three separate leases with one lease executed by all three tenants. The Trustees, on the other hand, contend that the existence of the wall is not the only issue. As their lawyer put it in a letter to Plaintiffs counsel, “Of more concern than the wall itself is the purpose that the partition wall serves.” Exhibit 5 at 10.
1. The Test for the Trustees’ Consent to the Partition Wall
Master Deed ¶1 l(C)(d) allows a unit owner to change the interior partitioning of her unit, so long as to change does not adversely affect structural aspects *641 of the building. That provision, however, requires a unit owner to obtain the approval of the Trustees, and to abide by any conditions imposed by the Trustees. The Master Deed does not set a standard limiting the discretion of the Trustees in deciding whether to give their approval.
Plaintiff maintains, however, that the approval of the Trustees may not be unreasonably withheld. Plaintiff relies heavily on a decision by a Superior Court judge in Yankovski v. Keller, 18 Mass. L. Rptr. 431, 2004 WL 2451293 (Mass.Super.). In Yankovski, the condominium’s Declaration of Trust specifically imposed a requirement that the trustees not unreasonably withhold their consent to interior unit changes, so the case is not directly relevant. Plaintiff cites it, however, for the court’s analysis of why a reasonableness standard is appropriate when trustees hold the power to disallow interior work. Plaintiff suggests that the reasoning of Yankovski leads to the conclusion that trustees should not be able to unreasonably withhold their consent even where, unlike in Yankovski itself, the condominium documents impose no reasonableness standard.
I need not resolve the question of whether the Trustees were bound to not unreasonably withhold their consent to Plaintiffs partition wall. Even if that standard applied, on these undisputed facts the Trustees met that test.
2. The Reasonableness of the Trustees’ Refusal to Approve the Partition Wall
Plaintiff suggests that the only reasonable justification for condominium trustees to deny a unit owner permission to install an interior wall is to make sure that the partition is appropriately built, safe, and does not interfere with the building’s structural integrity or its electrical, plumbing, or other systems. Plaintiff assuaged the Trustees’ concerns about such issues, Plaintiff argues, when she belatedly provided the Trustees with a building permit.
While concerns about the physical integrity of the wall and the building could provide a reasonable basis for Trustees to withhold their consent, they do not provide the only such bases. To the contrary, the Trustees are permitted, and perhaps even required, to consider effects of the partition wall that extend beyond its physical impacts.
The Master Deed specifically identifies Unit 303 as a two-bedroom unit. Plaintiff is required to comply with the Master Deed, which prescribes the “rules of the game,” Strauss v. Oyster River Condominium Trust, 417 Mass. 442, 452 (1994), because a unit owner’s interest is “subject to the limitations set forth in the Master Deed.” Joy Street Condominium Association v. Board of Appeal of Boston, 426 Mass. 485, 487 (1988); see also M.G.L.c. 183A, §4(3) (“Each unit owner shall comply with . . . restrictions set forth in the master deed . . .”). Not only do the Trustees have the power to enforce the two-bedroom restriction, but they have good reason to do so. Other unit owners may well have purchased their units in reliance on the fact that Unit 303 is a two-bedroom unit, or on the fact that the condominium consists entirely of one-bedroom and two-bedroom units. Third parties may also have relied on those facts, such as the City of Somerville when it issued the special permit or similar approval for construction of the building, or lenders who made mortgage loans to unit owners. In short, the Master Deed informs the world that the condominium contains only one-bedroom and two-bedroom units, and the Trustees are justified in being concerned about the transformation of one of those units into a three-bedroom unit.
The Master Deed is one of the originating documents under which the condominium was created. The Master Deed restricted the number of bedrooms in Unit 303 well before Plaintiff purchased that unit. As the Appeals Court noted in a case on which Plaintiff relies, restrictions contained in a condominium’s originating documents are “clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed ... Indeed, a use restriction in [the originating documents] may have a certain degree of unreasonableness to it, and yet withstand attack in the courts.” Noble v. Murphy, 34 Mass.App.Ct. 452, 459 (1992), quoting Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637, 639-40 (Fla.Dist.Ct.App. 1981).
Plaintiff points out that the Master Deed contains no limitation on the number of unrelated persons who can occupy a unit, and the Somerville zoning ordinance allows four unrelated persons to cohabit. But that is beside the point. The violation alleged by the Trustees is not that Plaintiffs three tenants are not related to one another. Rather, the Trustees are concerned that Plaintiff has converted a two-bedroom unit into a three-bedroom unit without amending the Master Deed by obtaining the required vote of unit owners holding 75% of the beneficial interest in the condominium.
Not only did Plaintiff violate the provision of the Master Deed identifying Unit 303 as a two-bedroom unit, but she also breached section 11 (C) (b) of the Master Deed by renting out portions of a condominium unit. Plaintiff deliberately attracted three independent tenants to Unit 303 through her advertisements. She then signed separate leases, beginning and ending on different dates, with three individuals who apparently did not know each other, for three different portions of the condominium unit. When the Trustees sent her a cease-and-desist letter, she papered over that violation by having her three independent tenants sign one lease. But nothing changed in the way the three independent tenants used the unit. They continued to pay their rent separately, and they continued to use *642 the living room as one of three bedrooms in what the Master Deed required to be a two-bedroom unit.
Plaintiff was able to rent the unit to those three independent persons only by erecting the partition wall and converting the living room into a third bedroom. The Trustees took into account this purpose of the wall when they denied their approval. Even if the Trustees were required to act reasonably in deciding whether to withhold their approval, the Trustees did so in this situation. Thus the Trustees are entitled to summary judgment, and to a permanent injunction requiring Plaintiff to remove the partition wall and to restore Unit 303 to its prior and required status as a two-bedroom unit.
3. Attorneys fees
The condominium statute permits the Trustees to recover any expenses incurred as a result of a unit owner’s failure to abide by the requirements of the Master Deed. M.G.L.c. 183A, §6(a)(ii). Section 6(b) of the condominium statute says that the expenses for which the unit owner shall be liable include attorneys fees. The Trustees suggest that, under these provisions, Plaintiff is statutorily liable to pay the attorneys fees and costs they incurred in their dealings with Plaintiff before this lawsuit, and the defending, and ultimately prevailing in, this lawsuit. I agree with that principle.
The Trustees have submitted an affidavit of their counsel Christine A. Murphy in support of their request for attorneys fees. Ms. Murphy’s affidavit identifies the lawyers at her law firm, Marcus, Ericco, Emmer & Brooks, P.C., and their billing rates, and then refers to the billing statements of her firm, which form a part of Exhibit 13. Also in Exhibit 13 are bills from the law firm of Perkins & Anctil, P.C., which represented the Trustees at the outset of their dealings with Plaintiff, but there is no affidavit identifying the attorneys or their billing rates, and it is not clear if the amount of attorneys fees sought in Ms. Murphy’s affidavit includes the fees of that law firm. Nor does Ms. Murphy explain why the billing rate of a partner in her firm ranges from $200 to $320 per hour over the relatively short course of this dispute. I would also be aided by a fuller explanation of what tasks the lawyers were working on and when, so that I do not need to divine that information for myself from the raw billing records. Finally, Plaintiff points out that she paid some legal fees assessed by the Trustees early in her dealings with them, and so the Trustees should explain whether their attorneys fees calculation gives Plaintiff credit for that payment. The Trustees are directed to serve a formal petition for attorneys fees within 30 days of the date of this order, to which Plaintiff may respond under the provisions of Superior Court Rule 9A.
Conclusion and Order
Defendant’s motion for summary judgment is ALLOWED. I issue the following declaratory relief:
1. I declare that Plaintiffs maintenance of a third bedroom in her unit violates the Master Deed and cannot be continued absent a Master Deed amendment, which Plaintiff has not obtained;
2.1 declare that the partition wall in Plaintiffs unit violates the Master Deed, and I issue a permanent injunction requiring Plaintiff to remove the wall and restore her unit to its original condition;
3. I declare that Plaintiff has leased less than the entirety of her unit to her current tenants in violation of the Master Deed, and I issue a permanent injunction requiring Plaintiff to enter into a lease arrangement compliant with the Master Deed, which she may do, if she so chooses, by causing her current tenants to occupy the unit as a two-bedroom unit; and
4. I declare that the condominium trust is entitled to its reasonable attorneys fees incurred in enforcing the provisions of the Master Deed against Plaintiff, which will constitute a statutory lien upon Unit 303, and I direct the Trustees to serve and file a petition for attorneys fees as described above.

 All references to “Exhibits” in this Memorandum shall refer to this appendix.

 The Trustees suggest that a vote by owners of 67% of the beneficial interest can amend the Master Deed, citing Master Deed § 14(B) (2); however, that provision states that its 67% requirement does not apply if a higher percentage is required elsewhere in the Master Deed.

 This e-mail exchange is pages 25 and 26 of Exhibit 5.

 These three leases, or at least relevant portions thereof, are found in Exhibit 6.

 This 2010 lease is found, among other places, in Exhibit 6.