NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12019

MASSACHUSETTS INSURERS INSOLVENCY FUND  vs.  BERKSHIRE BANK.


Suffolk.     September 8, 2016. - November 3, 2016.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Massachusetts Insurers Insolvency Fund.  Insurance, Workers'
     compensation insurance, Insolvency of insurer.  Workers'
     Compensation Act, Insurer, Reimbursement of insurer.
     Statute, Construction.  Words, "On behalf of."



Civil action commenced in the Superior Court Department on
July 14, 2014.

The case was heard by Mitchell H. Kaplan, J., on motions
for summary judgment.

The Supreme Judicial Court granted applications for direct
appellate review.


Gregory P. Deschenes (Kurt Mullen with him) for the
plaintiff.
Owen Gallagher (Gordon Prescott with him) for the
defendant.


BOTSFORD, J.  General Laws c. 175D, § 17 (§ 17), authorizes

the Massachusetts Insurers Insolvency Fund (Fund) to recover

from "high net worth insureds" certain amounts paid by the Fund "on behalf of" such insureds. G. L. c. 175D, § 17 (3). The Fund brought this action in the Superior Court pursuant to § 17, seeking to recover from the defendant Berkshire Bank (Berkshire) an entity that meets the definition of "high net worth insured," workers' compensation benefits it has paid to a Berkshire employee. Ruling on cross motions for summary judgment, a judge of that court interpreted § 17 (3) to preclude the Fund's recovery. We conclude that the Fund is authorized to recoup the amounts in question because they were paid by the Fund "on behalf of" Berkshire within the meaning of § 17 (3). Accordingly, we reverse the judgment of the Superior Court.

Background. Both parties agree that there are no material facts in dispute. The memorandum of decision of the Superior Court judge sets out the background facts succinctly, which we quote here:

"In May 2003, [Donna] Poli, an assistant branch manager for Woronoco Savings Bank (Woronoco), injured her back while lifting coin-filled bags. Woronoco was then the named insured under a workers' compensation/employer's liability policy issued by Centennial [Insurance Company]. Woronoco notified Centennial of the injury and Centennial began paying Poli weekly workers' compensation benefits pursuant to G. L. c. 152, § 34 [providing temporary total incapacity benefits for up to three years]. On June 16, 2005, Woronoco merged with and into Berkshire.

"In August 2006, Poli exhausted her entitlement to benefits under G. L. c. 152, § 34, and Centennial voluntarily commenced payments under G. L. c. 152, § 35 [providing for partial incapacity benefits]. Four years

later, in August 2010, Poli exhausted her entitlement to benefits under G. L. c. 152, § 35, and Centennial ceased making any payments. In response, Poli sought permanent and total disability compensation under G. L. c. 152, § 34A. [I]n February 2011, the Department of Industrial Accidents (DIA) denied her claim after a conference. Poli appealed.

"In April 2011, the New York Supreme Court placed Centennial, which is domiciled in New York, into liquidation. Pursuant to the provisions of G. L. c. 175D, the Fund assumed administration of Poli's claim. On September 7, 2011, the Fund entered into a lump sum agreement with Poli, under G. L. c. 152, § 48, pursuant to which it agreed to pay her $85,000 and to pay all future medical expenses arising from the injury. The DIA approved the agreement a week later. Berkshire was not consulted by the Fund with respect to its agreement with Poli.

"In January 2012, the Fund sent a demand to Berkshire seeking to recoup the amounts paid to Poli on the grounds that Berkshire was a high net worth insured and was thus obligated to reimburse the Fund under G. L. c. 175D, § 17 (3). Berkshire refused to pay the Fund, prompting the Fund to bring the present lawsuit in July 2014. The Fund's amended complaint brings a claim for breach of statutory duty to reimburse and seeks a declaratory judgment that Berkshire is liable to reimburse the Fund for future payments and incurred expenses associated with Poli's workers' compensation claim. Both parties now move for summary judgment. There is no dispute that Berkshire qualifies as a high net worth insured."

The motion judge allowed Berkshire's motion for summary judgment and denied the Fund's motion. Concluding that § 17 entitled the Fund to recover from high net worth insureds amounts the Fund had paid only when the amounts in question had been paid "on behalf of the insured," § 17 (3), the judge ruled that the statutory scheme for workers' compensation in Massachusetts effectively precluded such recoupment. He

reasoned that once an employer purchases a qualifying workers' compensation insurance policy, the employer has no obligation to pay workers' compensation benefits to any employee because the responsibility to make such payments lies exclusively with the insurer.  As a result, any amounts paid by the Fund would not be "on behalf of" the insured employer, and recoupment pursuant to § 17 would not be available.  Final judgment entered for Berkshire, and we granted both parties' applications for direct appellate review.

Discussion.  "Because this case was decided on cross motions for summary judgment with no dispute as to material facts, one of 'the moving part[ies] is entitled to judgment as a matter of law.'"  Massachusetts Care Self-Ins. Group, Inc. v. Massachusetts Insurers Insolvency Fund, 458 Mass. 268, 270 (2010), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  The single issue raised is one of statutory interpretation, and we review the motion judge's decision de novo.  Massachusetts Care Self-Ins. Group, Inc., supra.

To provide context, we briefly discuss the Fund and its enabling statute.  The Fund is a nonprofit, unincorporated legal entity established in 1970 to provide a limited form of protection from insurer insolvencies.  G. L. c. 175D, inserted by St. 1970, c. 261.  See Clark Equip. Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 166-167 (1996).  The

Fund stands in place of an insolvent insurer and is obligated to pay all "covered" claims against that insurer, in most instances up to a cap of $299,999 per claim. G. L. c. 175D, § 5 (1) (a). Massachusetts Insurers Insolvency Fund v. Smith, 458 Mass. 561, 562 (2010) (Fund v. Smith). Patterned on the Post-Assessment Insurance Guaranty Association Model Bill drafted by the National Association of Insurance Commissioners, see Clark Equip. Co., supra at 167 n.2, G. L. c. 175D aims to "minimiz[e] financial loss to claimants or policyholders" resulting from an insurer's insolvency (citation omitted). Fund v. Smith, supra. Because member insurers may recover amounts paid into the Fund by increasing their rates and premiums, G. L. c. 175D, § 13, the "cost of paying claims against insolvent insurers is . . . ultimately passed on to the insurance-buying public." Massachusetts Motor Vehicle Reinsurance Facility v. Commissioner of Ins., 379 Mass. 527, 530 (1980).

There are certain types of insurance that are expressly excluded from coverage by the Fund. G. L. c. 175D, § 2.[1] Although it was not always the case, since 1988, workers' compensation insurance claims have qualified for Fund coverage,

_____

[1] General Laws c. 175D, § 2, currently provides: "This chapter shall apply to all kinds of direct insurance, except life, accident and health, title, surety, disability credit, mortgage guaranty, financial guaranty or other forms of insurance offering protection against investment risks, insurance of warranties of any type of service contracts and ocean marine insurance."

and since 1993, there has been no cap on the Fund's financial responsibility for such claims.  See G. L. c. 175D, § 2, as amended by St. 1988, c. 302, § 1 (removing workers' compensation from chapter's listed exceptions); G. L. c. 175D, § 5 (1) (a), as amended by St. 1992, c. 318, § 1 (removing $300,000 cap for workers' compensation claims).

Section 17, the high net worth insured provision at issue here, was added to G. L. c. 175D in 2006.  See St. 2006, c. 342, § 2.  Section 17 provides in pertinent part:

"(1) For purposes of this section 'high net worth insured' shall mean any insured whose net worth exceeds $25 million on December 31 of the year before the year in which the insurer becomes an insolvent insurer; but, an insured's net worth on that date shall be considered to include the aggregate net worth of the insured and all of its subsidiaries and affiliates as calculated on a consolidated basis.  'High net worth insured' shall not include a [F]ederal, [S]tate[,] or local government entity.

"(2) The [F]und shall not be obligated to pay a first party claim by a high net worth insured.

"(3) The [F]und shall have the right to recover from a high net worth insured amounts paid by the [F]und to or on behalf of the insured, whether for indemnity, defense[,] or otherwise.

"(4) The [F]und shall not be obligated to pay a claim that would otherwise be a covered claim that is an obligation to or on behalf of a person who has a net worth greater than that allowed by the insurance guaranty association law of the [S]tate of residence of the claimant at the time specified by that [S]tate's applicable law, and which fund has denied coverage to that claimant on that basis.

"(5) The [F]und shall establish reasonable procedures subject to the approval of the commissioner [of insurance]

> for requesting financial information from insureds on a confidential basis for purposes of applying this section . . . ."  (Emphasis added.)

Section 17 contains no language carving out any exceptions for any particular types of insurance otherwise covered by the Fund, and Berkshire indisputably qualifies as a high net worth insured under the definition of the term in § 17 (1). Accordingly, as the motion judge concluded, the question whether the Fund may recover for the payments made to Poli depends on the meaning of § 17 (3), and more specifically, on the meaning of the phrase, "on behalf of the insured, whether for indemnity, defense[,] or otherwise."  In answering this question, we follow the rule that a statute is to be interpreted "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished."  Fund v. Smith, 458 Mass. at 565, quoting Lowery v. Klemm, 446 Mass. 572, 576-577 (2006).

Berkshire argues, in agreement with the reasoning of the motion judge, that the Fund's payments were not made on its behalf because under the Commonwealth's workers' compensation regime, once the employer purchases workers' compensation insurance, the liability to pay compensation benefits is wholly the insurer's, and the employer retains no further

responsibility.  See G. L. c. 152, § 26 (requiring that injured workers "be paid compensation by the insurer or self-insurer").[2]

Berkshire is correct that the insurer is directly liable for paying workers' compensation benefits.  See, e.g., Insurance Co. of Penn. v. Great Northern Ins. Co., 473 Mass. 745, 750 (2016).  But for purposes of interpreting "on behalf of the insured" in § 17 (3), that fact is not dispositive.  Berkshire concedes, as it must, that employers are required to provide their employees with workers' compensation benefits, see G. L. c. 152, § 25A, or face severe penalties and common-law tort liability.  See G. L. c. 152, §§ 25C, 66, 67.  See also, e.g., LaClair v. Silberline Mfg. Co., 379 Mass. 21, 26 (1979); O'Dea v. J.A.L., Inc., 30 Mass. App. Ct. 449, 450 (1991).  The employer's obligation to provide coverage is a statutory one that exists independently of the insurer.  Thus, G. L. c. 152, § 25A, provides that an employer may satisfy the obligation by purchasing an appropriate workers' compensation insurance policy from a qualified insurer, see G. L. c. 152, § 25A (1), but there are other options available that include becoming a member of a

---

[2] Berkshire further asserts that G. L. 175D, § 17 (§ 17), covers only third-party liability insurance, and that workers' compensation insurance is not liability insurance.  We find no support in G. L. c. 175D for this limited view of the scope of § 17, given that the statute nowhere restricts the Fund's coverage to third-party liability insurance or even references the term.

workers' compensation self-insurance group, see id., or becoming licensed as a self-insurer, see G. L. c. 152, § 25A (2).

"On behalf of" is not a defined term or phrase in § 17 (3), but "[w]ords that are not defined in a statute . . . should be given their usual and accepted meanings, derived from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions" (quotations and citation omitted).[3]  See MacLaurin v. Holyoke, 475 Mass. 231, 239 (2016).  The phrase "on behalf of" is generally defined to mean "in the interest of; as the representative of; for the benefit of."  Webster's Third New International Dictionary 198 (1993).  See Black's Law Dictionary 184 (10th ed. 2014) (same).  Using this definition, it is clear, as the Fund argues, that in making payments of workers' compensation benefits to an injured employee, the insurer does so "in the interest of" or "for the benefit of" the employer:  the insurer is acting pursuant to an insurance contract that the employer has entered into to satisfy its statutory obligation to provide for workers' compensation benefits.

Berkshire contends, however, that this interpretation of "on behalf of" is fatally flawed because the phrase must be

_____

[3] The parties have not pointed to any legislative history (and we have found none) to suggest that, in using the phrase "on behalf of" in § 17 (3), the Legislature intended a meaning diverging from the phrase's usual one.

considered in conjunction with the words that immediately follow in § 17 (3) -- "for indemnity, defense[,] or otherwise" -- and in Berkshire's view, the Fund's payments to Poli cannot permissibly be characterized as being for any one of these purposes.  Berkshire argues that, in the insurance context, "indemnity" and "defense" have each "acquired a technical meaning as recognized by the Legislature" that refers essentially to the insurer's obligation to indemnify (i.e., to pay for the legal liability of) its insured or to defend its insured against legal liability, but under the Massachusetts workers' compensation system, the legal liability to pay benefits rests solely with the insurer, and the insured employer has none.[4]

This view is difficult to reconcile with the language of the Centennial policy insuring Berkshire.  That policy contains provisions requiring the insurer to "pay promptly when due the benefits required of you [Berkshire] by the workers compensation law", and "to defend at our expense any claim, proceeding or suit against you [Berkshire] for benefits payable by this insurance."  These provisions are identical to policy provisions

---

[4] Berkshire argues further that "otherwise" refers only "to the additional payments found in policy provisions that are usually identified as 'supplementary payments' or 'additional costs we will pay.'"  There is no language in § 17 (3) or elsewhere in the statute -- or, to our knowledge, in its legislative history -- to support Berkshire's claim.

that this court previously has recognized as providing "defense and indemnity of the employer to claims for benefits required by the workers' compensation statute." See HDH Corp. v. Atlantic Charter Ins. Co., 425 Mass. 433, 436 & n.7 (1997). The Fund argues that in making the payments to Poli at issue here, it was providing to Berkshire the contractual indemnity benefits to which Berkshire was entitled under the Centennial policy that Berkshire (through Woronoco) had purchased to satisfy its statutory obligation as a Massachusetts employer to provide for workers' compensation benefits. See G. L. c. 152, § 25A. We agree, and conclude that the Fund's payments to Poli meet the requirement of § 17 (3) that they be "amounts paid by the [F]und to or on behalf of the insured, whether for indemnity, defense[,] or otherwise."

As previously noted, § 17 contains no language expressly exempting any type of insurance that is otherwise covered by the Fund. Accordingly, Berkshire's proposed interpretation of § 17 (3) necessarily takes as its premise that the Legislature implicitly intended to exempt workers' compensation insurance and high net worth insured employers from the obligation to reimburse the Fund for any workers' compensation amounts that the Fund might be required to pay. The history of G. L. c. 175D, however, reflects that where the Legislature has wished to treat a particular type of insurance in a distinct way, it

has done so explicitly -- or at least it has done so with respect to workers' compensation insurance.  Thus, as enacted in 1970, G. L. c. 175D explicitly exempted workers' compensation insurance from the statute's application.  See G. L. c. 175D, § 2, inserted by St. 1970, c. 261, § 1.  In 1988, the Legislature explicitly removed this specific exemption.  See St. 1988, c. 302, § 1.  And in 1993, the Legislature explicitly lifted the otherwise applicable cap on the Fund's individual claim coverage obligation specifically for workers' compensation insurance claims.  See St. 1992, c. 318, § 1.  In light of this legislative history, we do not accept that in enacting the high net worth insured recovery provision reflected in § 17, the Legislature, without so stating, nonetheless intended to exclude workers' compensation insurance and insureds from its reach.[5]

---

[5] This conclusion finds support in a comment to § 11(B) of the high net worth provision of the Post-Assessment Property and Liability Insurance Guaranty Association Model Act (Model Act) on which G. L. c. 175D is patterned.  See Clark Equip. Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 167 n.2 (1996).  The comment in the Model Act states, "The reference to 'liability obligations' includes workers' compensation insurance coverages."  III National Association of Insurance Commissioners, Model Laws, Regulations and Guidelines, at 540-12 (1996).  According to the legislative history to § 11 (B), the comment was added "to clarify the original drafter's intent that the net worth provision apply to workers' compensation claims." Id. at 540-31 (1997).  Although Berkshire argues that the Model Act contemplates only workers' compensation systems in which employers are directly liable to employees, we find no support in the Model Act for a distinction between such a scheme and one in which, as in Massachusetts, the employer's responsibility is to provide for workers' compensation coverage.

We construe statutory language so that the purpose of its framers may be effectuated. See MacLaurin, 475 Mass. at 238, and cases cited. The interpretation of § 17 (3) that we adopt here is consonant with the purpose of the Fund statute, G. L. c. 175D, to protect insureds when their insurers fail, but to do so in a manner that acknowledges the need to limit the cost ultimately borne by the insurance-buying public. See Fund v. Smith, 458 Mass. at 563, and cases cited. The motion judge, quoting Pilon's Case, 69 Mass. App. Ct. 167, 172 (2007), opined that "[t]he net-worth provisions of [§] 17 (3) are clearly intended to make certain insureds that are capable of absorbing the loss that occurs when an insurer becomes insolvent bear that loss instead of the Fund, which 'minimizes the financial burden on the insurance-buying public and conserves the . . . Fund's limited resources.'"[6] We agree.

Moreover, to read in an exception for one of the most costly types of insurance claims would be contrary to the public policy behind the Fund's creation and evolution. See, e.g., HDH

_____

[6] The parties have included a number of documents in the record that form part of the legislative history of § 17, including comments of the Office of Consumer Affairs and Business Regulation in support of the legislation. These comments are consistent with the motion judge's, and our, understanding of the intent of § 17: "The purpose of this legislation is to limit guaranty fund [G. L. c. 175D] coverage to individuals and entities, i.e., the so called 'mom and pop' claimants, who, unlike high net worth insureds, are not typically in a position to finance a loss if their insurer becomes insolvent."

Corp., 425 Mass. at 440 (describing cost of mandatory workers' compensation insurance as "significant aspect of the business climate of the Commonwealth"). Where the Legislature has recognized the expense of workers' compensation claims by removing the statutory cap on recovery from the Fund for this type of claim, see G. L. c. 175D, § 5 (1) (a), it is reasonable to conclude that in enacting the high net worth insured provision embodied in § 17, the Legislature did not intend to preclude recovery from high net worth employers for this expensive type of claim.[7]

Conclusion. The judgment of the Superior Court is

---

[7] Berkshire's final argument is that the Fund's ability to recover the value of workers' compensation claims from high net worth insureds is prohibited by G. L. c. 175D, § 8 (1), which provides that "[t]he Fund shall have no cause of action against the insured of the insolvent insurer for any sums it has paid out." But, as Berkshire recognizes, accepted principles of statutory construction dictate that in the case of conflict, the more specific and later-enacted statute governs. See, e.g., Commonwealth v. Houston, 430 Mass. 616, 625 (2000). Here, § 8 (1) is in direct conflict with the more recently enacted and more specific high net worth insured provision set out in § 17. If § 8 (1) were to apply, § 17 would be inapplicable to all types of insurance purchased by high net worth insureds, not only workers' compensation insurance -- a result that contradicts the plain words and purpose of § 17. We interpret legislation so as to render it "effective, consonant with reason and common sense," and will not construe a statute in a manner that achieves an illogical result (citation omitted). See, e.g., Rotondi v. Contributory Retirement Appeal Bd., 463 Mass. 644, 648 (2012).

reversed, and the case is remanded to the Superior Court for entry of judgment in favor of the Fund.

<u>So ordered</u>.