NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12548

ANA ARIAS-VILLANO & others[1]  vs.  CHANG & SONS ENTERPRISES, INC.,
& others.[2]


Franklin.    November 5, 2018. - March 15, 2019.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, & Kafker,
JJ.


Labor, Overtime compensation.  Agriculture.



Civil action commenced in the Superior Court Department on
November 17, 2015.

The case was heard by Michael K. Callan, J., on motions for
summary judgment.

The Supreme Judicial Court granted an application for
direct appellate review.


Susan E. Garcia Nofi (Leticia Medina-Richman also present)
for the plaintiffs.

---

[1] Jorge Alvarez, Noelia Gomez-Garcia, Beatriz Perez-
Hernandez, Marlyn Sosa-Saucedo, Edwin Merida-Lopez, Jacobo
Lopez-Funes, Adrian Cervantes-Acosta, Florindo Alvarado-Argueta,
David Pacheco-Herrera, Maria Soto-Aguilera, Ronaldo Carrillo-
Funes, Edilmar Morales-Matias, Reynaldo Morales-Morales, Rolando
Alvarado-Argueta, & Paulino Chaparro-Bravo.

[2] Sidney Chang and Tso-Cheng Chang.

Sandra E. Lundy (David G. Gabor also present) for the defendants.

Christopher J. Schulte, of the District of Columbia, for American Mushroom Institute, amicus curiae, submitted a brief.

William C. Newman & Harris Freeman, for American Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

BUDD, J.  The issue in this case is whether the plaintiffs, who work for the defendants' company that grows, harvests, packages, and distributes bean sprouts, are entitled to overtime pay for the hours they worked over forty each week under G. L. c. 151, § 1A (overtime statute).  A judge of the Superior Court determined that the work that the plaintiffs performed fell under the agricultural exemption to the overtime statute, G. L. c. 151, § 1A (19), and, on cross motions for summary judgment, allowed the defendants' motion and denied the plaintiffs'.  We conclude that, under the plain language of the statute and the legislative history, the agricultural exemption does not apply to the plaintiffs, and therefore, they are entitled to overtime wages.[3]  Accordingly, we reverse the grant of summary judgment in favor of the defendants and the denial of the plaintiffs'

---

[3] We acknowledge the amicus brief submitted by the American Mushroom Institute, as well as the amicus brief submitted by the American Civil Liberties Union of Massachusetts, Massachusetts Law Reform Institute, Pioneer Valley Workers Center, United Food and Commercial Workers Local 1459, University of Massachusetts Labor Relations and Research Center, and Michael Wishnie.

motion.  The plaintiffs' motion for summary judgment shall be allowed.

1. Background.  We set forth the material facts contained in the judge's written decision on the motions for summary judgment, supplemented with undisputed facts from the record. Boazova v. Safety Ins. Co., 462 Mass. 346, 347 (2012).  The defendants grow, harvest, package, and distribute bean sprouts in a 44,000 square foot facility that operates year-round.  Ten fifteen-by-fifty square foot rooms are dedicated to growing the bean sprouts, a hydroponic operation that is mostly automated. Beans are fed into machines that pasteurize them and then discharge them into containers where they sprout without the use of soil.  Computers monitor the sprouts and dispense water and fertilizer into the containers when needed.

The plaintiffs, who were employed by the defendants for various periods of time from 2012 to 2015, were not involved in the growing operations, but instead cleaned, inspected, sorted, weighed, and packaged the bean sprouts.  They also cleaned the facility and discarded waste.  The plaintiffs regularly worked more than forty hours per week; some weeks they worked as many as seventy hours.  However, the plaintiffs were never paid the

overtime rate for the hours they worked in excess of forty hours weekly.[4]

The plaintiffs brought an action in the Superior Court, claiming that the defendants, their former employers, failed to pay them overtime wages as required by law. The defendants contended that the plaintiffs are not entitled to overtime wages because their work falls under the agricultural exemption, which states that the overtime pay requirement shall not apply to those "engaged in agriculture and farming on a farm." G. L. c. 151, § 1A (19).

Both parties moved for summary judgment. The motion judge allowed the defendants' motion and denied that of the plaintiffs. We granted the plaintiffs' application for direct appellate review.

2. Discussion. As the case was decided below on motions for summary judgment on an undisputed record, "one of the moving parties is entitled to judgment as a matter of law" (quotation and citation omitted). Massachusetts Insurers Insolvency Fund v. Berkshire Bank, 475 Mass. 839, 841 (2016). "The single issue

---

[4] Some plaintiffs were paid less than minimum wage for up to two months at the beginning of their employment. Although this rate would have violated the general minimum wage law and, after January 1, 2015, the special minimum wage rate for agricultural workers, the plaintiffs only allege violations of the overtime statute.

raised is one of statutory interpretation, and we review the motion judge's decision de novo."  Id.

a.  The overtime statute.  The overtime statute provides that "no employer in the commonwealth shall employ any of his employees in an occupation . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed."  G. L. c. 151, § 1A.

The overtime statute was enacted in 1960 as a provision of the minimum wage law, G. L. c. 151, which until that time did not provide for overtime compensation.  See St. 1960, c. 813.  See also G. L. c. 151, §§ 1, 2, as amended through St. 1959, c. 190.  The purpose of the overtime statute was three-fold: "to reduce the number of hours of work, encourage the employment of more persons, and compensate employees for the burden of a long workweek."  Mullally v. Waste Mgt. of Mass., Inc., 452 Mass. 526, 531 (2008).

However, the overtime statute includes twenty categories of exceptions from the overtime pay requirement that exempt work performed in certain locations, see, e.g., G. L. c. 151, § 1A (13) ("in a gasoline station"); certain types of work, see, e.g., G. L. c. 151, § 1A (2) ("as a golf caddy, newsboy or child actor or performer"); certain types of businesses, see, e.g.,

G. L. c. 151, § 1A (11) ("by an employer licensed and regulated pursuant to [G. L. c. 159A, motor vehicle common carriers]"); or a combination of factors. The agricultural exemption, at issue here, applies to laborers "engaged in agriculture and farming on a farm." G. L. c. 151, § 1A (19). Thus, the scope of the agricultural exemption turns on the meaning of the phrase "agriculture and farming."

"Our primary duty is to interpret a statute in accordance with the intent of the Legislature." Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996). See Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 719-720 (2002), and cases cited. At the outset, we note that, "as a remedial measure, the overtime statute must be broadly construed in light of its purpose, which is in part to compensate for a long work week." Casseus v. Eastern Bus Co., 478 Mass. 786, 797 (2018). Any exemptions are therefore to be construed narrowly. See Wood v. Executive Office of Communities & Dev., 411 Mass. 599, 604-605 (1992).

In determining the meaning of "agriculture and farming" as used in G. L. c. 151, § 1A (19), we look first to definitions provided in the chapter that apply to the overtime statute. See 2A N.J. Singer & S. Singer, Statutes & Statutory Construction § 47:7 (7th ed. rev. 2014) ("When a legislature does define statutory language, its definition usually is binding on courts,

even if the definition varies from a term's ordinary meaning").
See also Stenberg v. Carhart, 530 U.S. 914, 942 (2000).  General
Laws c. 151, § 2, defines "[a]gricultural and farm work" as
"labor on a farm and the growing and harvesting of agricultural,
floricultural and horticultural commodities," "unless the
context clearly requires otherwise."[5]

The definition refers to "growing and harvesting"
commodities but does not include postharvesting activities.
Thus, under the plain language of G. L. c. 151, § 2, the type of
work that the plaintiffs performed, i.e., cleaning, sorting, and
packaging the sprouts, does not fall within the scope of the
statute.  See Bulger v. Contributory Retirement Appeal Bd., 447
Mass. 651, 660 (2006), quoting Perez v. Bay State Ambulance &
Hosp. Rental Serv., Inc., 413 Mass. 670, 675 (1992)
("[statutory] definition [that] declares what a term means . . .
excludes any meaning that is not stated").

b.  Legislative history.  A narrow interpretation of the
agricultural exemption is supported by the legislative history
of the minimum wage and overtime statutes.  See Commonwealth v.
Mogelinski, 466 Mass. 627, 633 (2013), quoting Wright v.

---

[5] Although G. L. c. 151, § 1A (19) uses the terms
"agriculture and farming," and G. L. c. 151, § 2 defines
"[a]gricultural and farm work," "when similar words are used in
different parts of a statute, the meaning is presumed to be the
same throughout."  Booma v. Bigelow-Sanford Carpet Co., 330
Mass. 79, 82 (1953).

Collector & Treas. of Arlington, 422 Mass. 455, 457-458 (1996) (ordinary meaning given to words in statute  must be reasonable and supported by purpose and history of statute).

When originally enacted in 1947, the minimum wage statute was explicitly inapplicable to "domestic service in the home of the employer or labor on a farm" (emphasis added).  See St. 1947, c. 432.  The overtime statute, which was enacted in 1960 and worked in tandem with the minimum wage statute, similarly excluded farm labor.[6]  See St. 1960, c. 813; G. L. c. 151, §§ 1A, 2, as amended through St. 1959, c. 190.  The agricultural exemption, enacted seven years after the passage of the overtime statute, was part of a legislative reform package entitled "An act establishing minimum wage for farm workers and providing for the annual inspection of farm labor camps."  See St. 1967, c. 718.  As the title of the act suggests, the legislation was intended to benefit farm workers by, among other things, ensuring that they received a minimum wage.  See id. at § 3, inserting G. L. c. 151, § 2A.

The legislation was preceded by report of the Legislative Research Council that detailed the struggles faced by migrant farm laborers in the Commonwealth.  The Legislature commissioned

---

[6] Both the minimum wage and overtime requirements applied to those employed only in an "occupation," which the Legislature had defined in 1947 to exclude "labor on a farm."  See St. 1947, c. 432.  See also St. 1960, c. 813.

the report to better understand "what if any changes may be necessary to improve the status of the migrant worker without creating undue hardship on the Massachusetts farmer." See 1967 Senate Doc. No. 1303, at 7. Because of the seasonal nature of the industry, migrant workers faced incomes below the poverty level due to the lack of consistent, year-round employment.[7] See id. at 14-15 ("[the migrant worker] can expect to be unemployed for as much as half the year").

The report acknowledged opposition to providing overtime pay to agricultural workers from employers, who argued that a forty-hour work week was impractical given the time-sensitive nature of growing and harvesting perishable fruits and vegetables. See id. at 28 ("If the overtime provisions of current law are applied, employers may avoid night and overtime work. Thus, the full harvest may not be collected and of equal importance the worker is denied a chance to earn extra money").

Given these competing interests, St. 1967, c. 718, appears to have been an attempt to balance the needs of workers and employers. Thus, St. 1967, c. 718, § 3, established a fair minimum wage for agricultural workers, but St. 1967, c. 718,

---

[7] Migrant workers also suffered from isolation and substandard living conditions in temporary settlements. See 1967 Senate Doc. No. 1303, at 14-15.

§ 1, exempted them from receiving overtime wages.  See G. L. c. 151, §§ 1A (19), 2A.

c.  Comparison to cognate Federal overtime provision.  The defendants argue that this court should adopt the broad definition of "[a]griculture" contained in the Federal overtime provision.  We decline to do so.

It is true that the Massachusetts overtime statute is analogous to, and was patterned upon, the overtime provision of the Federal Fair Labor Standards Act (FLSA), which similarly requires that covered employees be paid an overtime rate for hours worked in excess of forty hours per week, 29 U.S.C. § 207(a)(1).  See Swift v. AutoZone, Inc., 441 Mass 443, 447 (2004); Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 40 (1st Cir. 1999).  Even so, the two are not identical.  In fact, the Massachusetts overtime statute was enacted, in part, to provide overtime compensation for many of those workers not covered by the FLSA.  See Swift, supra at 448-449.  Compare, e.g., G. L. c. 151, § 1A (19), with 29 U.S.C. § 213(a)(6) and 29 U.S.C. § 213(b)(12)-(13).

Unlike the minimum wage law, the FLSA defines "[a]griculture" to include "farming in all its branches and among other things comprises the cultivation and tillage of the soil, . . . the production, cultivation, growing, and harvesting of any agricultural . . . commodities . . . and any practices

. . . performed by a farmer or on a farm as <u>incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market</u>" (emphasis added).  29 U.S.C. § 203(f).  See 29 C.F.R. § 780.105 (July 1, 2018 ed.).

We see no indication that the Legislature intended that the FLSA definition of agriculture be applied to the agricultural exemption of the Massachusetts overtime statute.  Indeed, the history of the legislation leads to the opposite conclusion.  The House bill first introducing the agricultural exemption in 1967 referenced a broad definition of agriculture and farming found in G. L. c. 128, § 1A, which is nearly identical to the definition of agriculture in the FLSA.[8]  However, the statute that was ultimately enacted contained a much more narrow

---

[8] The House bill that introduced the agricultural exemption contained the following language:  "laborer on a farm engaged in agriculture and farming as defined in [G. L. c. 128, § 1A]."  See 1967 House Doc. No. 4653, at 3.  The 1967 version of G. L. c. 128, § 1A, defined farming and agriculture to "include farming in all of its branches and the cultivation and tillage of the soil, dairying, the production, cultivation, growing and harvesting of any agricultural, floricultural or horticultural commodities, the raising of livestock, the keeping and raising of poultry, swine, cattle and other domesticated animals used for food purposes, bees, fur-bearing animals, and any practices, including any forestry or lumbering operations, performed by a farmer, who is hereby defined as one engaged in agriculture or farming as herein defined, or on a farm as an incident to or in conjunction with such farming operations, including preparations for market, delivery to storage or to market or to carriers for transportation to market."  See St. 1960, c. 181.

definition of "agricultural and farm work," which can now be found in G. L. c. 151, § 2, discussed supra. For this reason, we reject the defendants' suggestion that the Legislature removed the reference to the broad definition of farming and agriculture merely to make the statute "less wordy," and decline to adopt the FLSA's definition of "agriculture" for the purposes of the agricultural exemption. See Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 432-433 (1983), citing International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 854-855 (1983) (Where "the language of a statute differs in material respects from a previously enacted analogous Federal statute which the Legislature appears to have considered, a decision to reject the legal standards embodied or implicit in the language of the Federal statute may be inferred").

3. Conclusion. By reading the plain language of the exemption in G. L. c. 151, § 1A (19), narrowly to include only the work of planting, raising, and harvesting crops,[9] we give effect to the statutory definition of agricultural and farm work in G. L. c. 151, § 2, as well as to the legislative intent to balance the interests of workers and employers.

As the plaintiffs here were not "engaged in agriculture and farming" within the meaning of the agricultural exemption, we

---

[9] We need not decide how the exemption should apply to agricultural operations that do not involve crops.

conclude that they were entitled to overtime pay for work performed in excess of forty hours per week, as provided by the overtime statute.[10]

The judgment allowing the defendants' motion for summary judgment and denying the plaintiffs' motion for summary judgment is reversed. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

---

[10] Having determined that the plaintiffs were not "engaged in agriculture and farming" as required by the agricultural exemption, we need not here opine on whether the plaintiffs performed their work "on a farm." See Somerset v. Dighton Water Dist., 347 Mass. 738, 743 (1964) (conjunction in statute should not be read as disjunctive unless it gives effect to recognized legislative purpose).