HENRY, J.
*670 This dispute between two condominium unit owners requires us to determine whether a condominium master deed contains an express easement permitting one unit owner to enjoy an easement through another owner's unit to gain access to a fire escape. Because we conclude that it does not, we also must determine whether one unit owner can enjoy an easement by necessity through another owner's unit for the same purpose. We conclude that an *208 easement by necessity does not arise under these circumstances. Accordingly, we reverse. *671 Background. We summarize the undisputed facts material to this appeal. The plaintiffs, Walter Chamberlain and Yin Kau Ho, as cotrustees of the Walter Chamberlain Revocable Trust (trustees), and defendant Byblos Investments International, LLC (Byblos),[4] each own units in a condominium located at 549-551 Boylston Street in Copley Square in the city of Boston. Walter Chamberlain, individually, originally held a commercial lease for unit 201 commencing November 1, 1993. In August of 1998, the owner of the building, Molded Antennas for Telecommunications, Inc. (MAT), converted the building to a five-unit condominium and executed and recorded a master deed. MAT sold unit 201 to Walter Chamberlain on October 1, 1998.[5] MAT sold unit 101 to Byblos on March 7, 2008. Byblos leases unit 101 to Wendy's Old Fashioned Hamburgers of New York, Inc. (Wendy's).
Unit 101 is comprised of 1,025 square feet in the basement, 1,900 square feet on the ground floor, 1,725 square feet on the first floor (also referred to as the mezzanine), and 1,100 square feet on the second floor at the rear of the building.[6] Wendy's uses this second floor space as a mechanical room. Unit 201 is on the front of the building facing Copley Square and contains 825 square feet on the second floor. There is a stairway leading to a landing on the second floor, which is located between unit 201 and the second-floor portion of unit 101.
The master deed defines the units, and then defines the condominium common areas, expressly stating that the common areas are "the entire property ... other than the Units." The master deed grants to units 201, 301, 401, and 501 the "exclusive right and easement ... to use" certain specific areas, including the fire escape stairs:
"Certain Units shall have the exclusive right and easement to use certain of the common areas and facilities as set forth below;
"...
*672 "(b) Units 201, 301, 401 and 501 are granted the exclusive right and easement ... to use the elevator adjoining the foyer, the main stair leading to the fifth floor, and the fire escape stairs located on the Building for the purpose of providing access and emergency egress to such Units, and shown on the plans as the 'Unit 201, 301, 401 and 501 Exclusive Use Areas' all subject to the obligations and restrictions contained in this Master Deed, the By-Laws, the Rules and Regulations of the Condominium Trust, and Chapter 183A."
The fire escape stairs are attached to the rear exterior wall of the building. The second-floor portion of unit 101 lies between unit 201 and the fire escape; thus, from the second floor, the fire escape stairs are only accessible from inside the second-floor portion of unit 101.[7]
*209 The trustees claim a right to open the door to the second-floor portion of unit 101 and to walk through the unit to access the fire escape.[8] In an amended three-count complaint, the trustees sought declaratory relief (count 1), damages for the defendants' refusal to honor an easement (count 2), and damages under G. L. c. 93A (count 3).
The trustees filed a motion for partial summary judgment as to count 1, arguing that unit 201 benefited from an easement over unit 101 as a matter of law, and the defendants filed a cross motion for summary judgment on all counts. A judge of the Superior Court (motion judge) granted the trustees' motion for partial summary judgment and denied the defendants' cross-motion. The *673 motion judge found that unit 201 enjoys both an express easement and an easement by necessity through the second-floor portion of unit 101 to access the fire escape.[9]
What remained of the matter following the partial summary judgment then proceeded to a bench trial before a different judge (trial judge), who found that the defendants violated the trustees' rights as owners of unit 201 and caused damages by blocking unit 201's access to the fire escape, which made unit 201 "unrentable" as a matter of fact and as a matter of law. The trial judge also found that the defendants violated G. L. c. 93A and awarded double damages and attorney's fees to the trustees. Judgment entered for the trustees in the amount of $742,126.43, with a final judgment awarding an additional $93,513.46 in attorney's fees and costs. The defendants timely appealed, challenging both the partial summary judgment ruling and the final judgment.
Standard of review. We review the order granting partial summary judgment de novo. See Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 637, 977 N.E.2d 552 (2012). Where the relevant facts are undisputed and the case was decided on cross motions for summary judgment on the same legal issue, " 'one of the moving part[ies] is entitled to judgment as a matter of law' (quotation omitted)." Modica v. Sheriff of Suffolk County, 477 Mass. 102, 103, 74 N.E.3d 1233 (2017), quoting Massachusetts Insurers Insolvency Fund v. Berkshire Bank, 475 Mass. 839, 841, 62 N.E.3d 56 (2016).
Discussion. "General Laws c. 183A sets out certain minimum requirements for establishing a proper condominium" and "contains a comprehensive scheme for defining and governing the common areas." Lallo v. Szabo, 75 Mass App. Ct. 1, 5, 911 N.E.2d 788 (2009). A unit owner is entitled *210 to exclusive ownership and control over his unit "as if it were sole and entirely independent of the other units in the condominium of which it forms a part." G. L. c. 183A, § 3. Such control "is subject only to the limitations set forth in the master deed and the condominium bylaws." 39 Joy St. Condominium Ass'n v. Board of Appeal of Boston, 426 Mass. 485, 487, 688 N.E.2d 1363 (1998). See G. L. c. 183A, § 4. There is no discussion of easements through units in c. 183A.
1. Express easement. First, we consider whether the master deed created an express easement granting unit 201 a right of way through unit 101 to access the fire escape stairs for emergency *674 egress.
An express easement can be created only by a writing signed by the party to be bound, and the writing "must identify with reasonable certainty the easement created and the dominant and servient tenements." Parkinson v. Assessors of Medfield, 395 Mass. 643, 645, 481 N.E.2d 491 (1985), S.C., 398 Mass. 112, 495 N.E.2d 294 (1986), quoting Dunlap Investors Ltd. v. Hogan, 133 Ariz. 130, 132, 650 P.2d 432 (1982). Where an easement is created by deed, its meaning, "derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances." Patterson v. Paul, 448 Mass. 658, 665, 863 N.E.2d 527 (2007), quoting Sheftel v. Lebel, 44 Mass. App. Ct. 175, 179, 689 N.E.2d 500 (1998). Where the language of the master deed is clear and unambiguous, the inquiry need go no further. Sheftel, supra.
The master deed grants unit 201 (and 301, 401, and 501) an express "exclusive right and easement ... to use ... the fire escape stairs located on the Building for the purpose of providing access and emergency egress to such Units"; however, as to unit 201, the master deed is facially defective in not providing access to the fire escape from the second floor. The second-floor plan shows no words or symbols indicating a second means of egress for unit 201 through the second-floor portion of unit 101 to the fire escape stairs. In fact, the second-floor plan does not show any secondary means of egress even from unit 101 via the fire escape stairs.[10] Rather, that plan shows a second means of egress for unit 201 through a separate door to the same interior stair case that serves the primary egress. This also is in contrast to the plans for floors three, four, and five, which mark a secondary means of egress using the fire escape. Moreover, this grant of an "easement" is "subject to the obligations and restrictions contained in this Master Deed, the By-Laws, the Rules and Regulations of the Condominium Trust, and Chapter 183A." The units are defined first and only then are common areas defined; thus, the possessory interests in the units take precedence over the easement to use the fire escape stairs. See G. L. c. 183A, § 4 ("Each unit owner shall *675 be entitled to the exclusive ownership and possession of his unit"). But see G. L. c. 183A, § 5 (b ) (2) (i) (permitting organization of unit owners to "[g]rant, modify and amend easements through, over and under the common areas and facilities").
Where the master deed provides an easement in favor of one unit for the benefit *211 of another, it does so explicitly. For example, the master deed provides that "[e]ach Unit shall have an easement to use, maintain, repair, operate, and replace all HVAC Equipment serving such Unit located in the Common Elements or in any of the other Units, and each Unit shall be subject to such easement in favor of the other Units" (emphasis added). Similarly, the master deed also provides that "[e]ach Unit shall be subject to an easement in favor of the owners of all other Units to use all pipes, wires, flues, ducts, conduits, plumbing lines and other portions of the common areas and facilities serving such other units and located in such unit" (emphasis added).
Accordingly, the master deed and plans do not grant unit 201 an express easement to pass through unit 101's second-floor space to access the fire escape stairs.
2. Easement by necessity. We next consider whether unit 201 holds such an easement by necessity. We conclude that it does not.
Generally, "[t]he party claiming an easement by necessity has the burden of establishing that the parties intended to create an easement that is not expressed in the deed." Kitras v. Aquinnah, 474 Mass. 132, 139, 49 N.E.3d 198 (2016). The trustees argue that unit 201 possesses an easement by necessity because unit 201's access through unit 101 is necessary for the reasonable enjoyment of unit 201's easement to use the fire escape stairs, and because MAT, as the initial owner of units 101 and 201 and the condominium declarant, intended to create such an easement. These arguments misconstrue the nature of unit ownership.
Condominium unit ownership provides a "hybrid interest in real estate, entitling the owner to both exclusive possession of his unit and an undivided interest as tenant in common with other unit owners in the common areas." Lallo, 75 Mass. App. Ct. at 4, 911 N.E.2d 788. As stated above, a unit owner's ownership interest is "subject only to the limitations set forth in the master deed and the condominium bylaws." 39 Joy St. Condominium Ass'n, 426 Mass. at 487, 688 N.E.2d 1363. Accordingly, upon execution of the master deed, the unit owners' rights and limitations are found exclusively within those documents.
*676 As previously concluded, nothing in the master deed here demonstrates the declarant's intention that unit 201 possess any rights to a portion of the building that the master deed designated as exclusively owned by unit 101. To read such an easement by necessity into the master deed would infringe upon Byblos's exclusive use and possession of unit 101, and "[o]ur law simply does not sanction this type of private eminent domain." Goulding v. Cook, 422 Mass. 276, 278, 661 N.E.2d 1322 (1996), quoting Goulding v. Cook, 38 Mass. App. Ct. 92, 99, 645 N.E.2d 54 (1995) (Armstrong, J., dissenting).[11] Without *212 deciding whether unit 201's lack of a second means of egress violates the building code, we note that such a violation is not the equivalent of a landlocked, inaccessible parcel, on which an easement by necessity is typically founded. See Kitras, 474 Mass. at 139-140, 49 N.E.3d 198.[12]
Although we are sympathetic to the impact of this decision on the owner of unit 201, we cannot disregard the legal instruments that created the condominium and units, and neither can the trustees. In considering who must bear the consequences of the scope and limitations of the rights of a particular unit, they must fall on the purchaser of the unit rather than on another unit owner in the building.
Conclusion. The motion judge erred in concluding that the trustees, as owners of unit 201, possess an easement over the second-floor portion of unit 101 to access the fire escape stairs. The trustees' claims for monetary damages and damages stemming *677 from violation of G. L. c. 93A were premised on the existence of a valid easement. In light of our conclusion that no valid easement exists, the final judgment and the order granting partial summary judgment are reversed. A new judgment shall enter declaring that the trustees, as owners of unit 201, do not possess an easement across the second-floor portion of unit 101 for purposes of emergency access to the fire escape.
So ordered.

Defendant Charles M. Badaoui is a member and the manager of Byblos.

Walther Chamberlain conveyed unit 201 to the trustees on February 14, 2006.

It is disputed whether the floor of the building that units 101 and 201 share is the second or third floor. The dispute is whether the mezzanine in unit 101 is sufficiently large to qualify as a floor. However, this dispute is irrelevant to our analysis; thus, we refer to the floor shared by units 101 and 201 as the second floor, as reflected in the condominium floor plans.

The remaining three units in the building each comprise an entire floor; thus, the occupants of those units are able to access the fire escape from within their respective units. None of these unit owners is a party to the lawsuit. The trustees' arguments would apply equally to the right to an easement through units 301, 401, and 501.

The parties' briefing was not entirely clear on the extent of the burden the trustees' claimed easement would have on unit 101 and in particular whether the door to the second-floor portion of the unit could have a lock. See 780 Code Mass. Regs. § 1006.2.1 (1997) ("An exit access shall not pass through a room subject to locking"); 780 Code Mass. Regs. § 1017.4.1 (1997) (with some exceptions, "egress doors shall be readily openable from the side from which egress is to be made without the use of a key or special knowledge or effort"). Without reaching this issue, we note that under the Restatement (Third) of Property (Servitudes) § 3.1 (2000) (Restatement), a servitude "is valid unless it is illegal or unconstitutional or violates public policy." Comment c to § 3.1 of the Restatement provides that "[a]n illegal servitude within the meaning of this section is one that is prohibited by a statute or governmental regulation."

After the order granting partial summary judgment issued, the defendants represented that the mechanical room was filled with equipment, such that access to the fire escape was limited or precluded altogether.

Paradoxically, although unit 101's mechanical room is the only avenue through which someone could access the fire escape stairs from the second floor, by reserving use of the fire escape exclusively to units 201-501, the master deed does not permit unit 101 to actually use the fire escape stairs. Because the question of unit 101's ability to use the fire escape has not been litigated, we need not determine whether unit 101 has a legal right to use the fire escape.

In Goulding, the Supreme Judicial Court confronted a case in which two sets of neighbors, the Gouldings and the Cooks, each claimed ownership of triangle of land that had been deemed the only suitable location for a new septic system that the town had required the Cooks to install. See Goulding, 422 Mass. at 276, 661 N.E.2d 1322. After the Land Court judge denied the Gouldings' petition for an injunction to prevent the Cooks from entering the contested parcel, the Cooks constructed their septic system on the parcel. See id. at 277, 661 N.E.2d 1322. More than a year later, the Land Court judge issued a judgment declaring that the Gouldings owned the parcel, but that such ownership was subject to an easement for the Cooks' septic system "at a price to be negotiated by the parties and with provisions for maintenance, repair and replacement as counsel so agree." Id. The Supreme Judicial Court vacated the Land Court judgment and ordered that the Cooks remove the septic system and pay damages to the Gouldings. See id. at 280, 661 N.E.2d 1322.

Because we conclude that unit 201 does not have an easement through the second-floor portion of unit 101, we do not consider whether any easement is subordinate to the unit 101 tenant's preexisting lease. Similarly, we need not reach the defendants' alternative argument that one or more unit owners cannot possess an easement over the building's common areas.