SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. DENNY A. GANNETT

 
 Docket:
 SJC-13659
 
 
 Dates:
 February 7, 2025 - May 23, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Supreme Judicial Court, Superintendence of inferior courts. Motor Vehicle, Operating under the influence. Evidence, Blood alcohol test, Medical record. Consent. Statute, Construction. Words, "Analysis."
 
 

       Civil action commenced in the Supreme
Judicial Court for the county of Suffolk on June 14, 2024.
      The case was reported by Georges, J.
      Kevin J. Hennessey, Assistant District
Attorney (Marina Moriarty, Assistant District Attorney, also present) for the
Commonwealth.
      Michael S. Bowser, Jr. (Samuel B.
Dallmeyer also present) for the respondent.
      BUDD, C.J. 
General Laws c. 90, § 24 (1) (e), "requires that
where a test [or analysis] of a defendant's breath or blood to determine
alcohol content is made by or at the direction of a police officer, it must be
done with the defendant's consent in order for the results to be admissible in
a prosecution for [operating a motor vehicle while under the influence of
alcohol (OUI)]."  Commonwealth v.
Bohigian, 486 Mass. 209, 211 (2020). 
This is true even if the blood was drawn by a third party but is
chemically tested or analyzed by the government.  See Commonwealth v. Moreau, 490 Mass. 387,
394 (2022).  
      Facing a charge of OUI, the defendant,[1]
Denny A. Gannett, sought to exclude evidence of his blood alcohol content
(BAC), arguing that an unconsented-to "analysis" of his blood had
been undertaken when State police analysts mathematically converted blood test
results from his medical records to the BAC scale.[2]   The defendant's motion was allowed, and the
Commonwealth sought an interlocutory appeal. 
For the reasons that follow, we reverse. 

      Background.  We summarize the relevant facts taken from
the record, reserving certain details for later discussion.  On October 28, 2021, an Essex police officer
witnessed a pickup truck driven by the defendant speed past his parked patrol
car.  The officer activated his lights
and siren and followed the truck for approximately one-half mile before the
defendant came to a stop.  Without
prompting, the defendant got out of the truck and approached the officer.  The officer noticed that the defendant was
unsteady on his feet, slurred his speech, smelled of alcohol, and had glassy,
bloodshot eyes.  After unsuccessfully
performing the horizontal gaze nystagmus test, the defendant refused other
field sobriety tests and a portable breath test.  The defendant was arrested and transported to
the police station where he was charged with OUI, third offense, in violation
of G. L. c. 90, § 24 (1) (a) (1), as well as resisting arrest
and three civil motor vehicle violations. 

      During the booking process, the defendant
spit a small amount of blood after refusing to submit to a breath test.  He was thereafter transported to a hospital
for treatment, where the attending physician ordered several blood tests,
including a serum blood test to measure the amount of alcohol in the defendant's
blood.  Accordingly, the defendant's
blood was drawn and analyzed by hospital personnel and the test results were
recorded in the defendant's medical records. 

      Police served a search warrant on the
hospital for samples of the defendant's blood and sent the samples to the State
police crime laboratory (State crime lab) for analysis.  The defendant filed a motion to suppress the
evidence obtained from the execution of the search warrant, arguing that he did
not "consent to provide his blood or urine or breath to the . . . [p]olice
. . . at any time."  The motion was
allowed "as to the blood sample and any analysis conducted by the State
police."
      Separately, the Commonwealth obtained the
defendant's medical records pursuant to Mass. R. Crim. P. 17 (a) (2),
378 Mass. 885 (1979).  See Commonwealth
v. Ackerman, 476 Mass. 1033, 1033–1034 (2017), quoting Commonwealth v. Dube,
413 Mass. 570, 570 (1992) (G. L. c. 233, § 79, permits admission
of certified hospital records including blood alcohol test "performed as a
routine medical practice in the course of the treatment of the
defendant").  Based on those
records, a forensic scientist at the State crime lab created a
"Serum/Plasma Conversion Report," which converted the serum/plasma ethanol
result reflected in the records to a BAC percentage.[3]  The report noted:  "The ethanol result used . . . was
provided by an external party.  The
testing to obtain the ethanol result was not performed at the [State crime lab]
. . . ."
      Prior to trial, the defendant moved in
limine to exclude all evidence of chemical testing, including that which was
"derived from medical information not directly generated by law
enforcement."  At the pretrial
hearing, defense counsel asked the trial judge, who was not the motion judge,
to bar the admission of the converted BAC results based upon the previous
suppression order.  The trial judge
agreed, reasoning that the BAC results were the "fruit of a piece of
evidence that's already been suppressed." 
The Commonwealth's motion for reconsideration was denied.  After filing a timely notice of appeal, the
Commonwealth petitioned this court for extraordinary relief pursuant to
G. L. c. 211, § 3, and the single justice reserved and reported
the case to the full court.
      Discussion.  The Commonwealth argues that the judge erred
when she barred evidence of the defendant's BAC derived from the information
contained in the defendant's medical records. 
We agree.
      In Bohigian, 486 Mass. at 213, we stated
that G. L. c. 90, § 24 (1) (e), prohibits the chemical
testing or analysis of a defendant's blood by police in connection with an OUI
prosecution without the defendant's consent, even if a duly authorized search
warrant is obtained.  Two years later, in
Moreau, 490 Mass. at 391-392, we clarified that the prohibition on
nonconsensual chemical testing or analysis of a defendant's blood extends to
circumstances in which the blood sample is drawn by a third party.  In Moreau, the State crime lab chemically
analyzed samples of the defendant's blood drawn by hospital personnel during
medical treatment.  Id. at 388.   
      Here, as in Moreau, although the
defendant's blood was not drawn at the direction of police, it was chemically
analyzed at police direction without the consent of the defendant, and
therefore, the results of the State crime lab's testing of the defendant's
blood samples were properly suppressed by the motion judge under
§ 24 (1) (e).  The
defendant contends, however, that the Moreau ruling goes further.  He argues that the mathematical calculation
performed by a forensic scientist at the State crime lab on information
documented in the defendant's medical records constitutes an
"analysis" under § 24 (1) (e).  As that calculation was performed at the
direction of police without his consent, the defendant claims it must be
excluded.[4]
      "Our primary duty is to interpret a
statute in accordance with the intent of the Legislature."  Arias-Villano v. Chang & Sons Enters.,
Inc., 481 Mass. 625, 628 (2019), quoting Pyle v. School Comm. of S. Hadley, 423
Mass. 283, 285 (1996).  "'The
language of the statute is the primary source of insight into' this
intent."  Casseus v. Eastern Bus
Co., 478 Mass. 786, 795 (2018), quoting Commonwealth v. Millican, 449 Mass.
298, 300 (2007).
      General Laws c. 90,
§ 24 (1) (e), states, in relevant part:
"In any
prosecution for a violation of [§ 24 (1) (a)], evidence of the percentage,
by weight, of alcohol in the defendant's blood at the time of the alleged
offense, as shown by chemical test or analysis of his blood or as indicated by
a chemical test or analysis of his breath, shall be admissible . . . provided,
however, that if such test or analysis was made by or at the direction of a
police officer, it was made with the consent of the defendant . . . ."
Read naturally, the
adjective "chemical" modifies both "test" and
"analysis."  See, e.g.,
Commonwealth v. Hamilton, 459 Mass. 422, 432 (2011), quoting 2A N.J. Singer,
Sutherland Statutory Construction § 47:16, at 352–353 (7th ed. 2007)
("ordinarily the coupling of words denotes an intention that they should
be understood in the same general sense"). 
Accord Commonwealth v. Gopaul, 86 Mass. App. Ct. 685, 688-689 (2014)
(interpreting statute describing "public park or playground" as
referencing public parks and public playgrounds).  
      This reading is buttressed by the fact
that the adjective "chemical" modifies "analysis" in other
subsections of § 24 (1), as well as neighboring sections.  See, e.g., G. L. c. 90,
§ 24 (1) (g) (license may be suspended "on the basis of chemical
analysis of [one's] breath"); G. L. c. 90, § 24N (similar);
G. L. c. 90, § 24K (describing "[c]hemical analysis of the
breath of a person charged with a violation of this chapter").  See Chin v. Merriot, 470 Mass. 527, 532
(2015) ("Although we look first to the plain language of the provision at
issue to ascertain the intent of the Legislature, we consider also other
sections of the statute, and examine the pertinent language in the context of
the entire statute").  Moreover, to
read the word "chemical" as modifying "test" but not
"analysis" would be nonsensical because a nonchemical analysis cannot
convert a physical blood or breath sample into BAC evidence as specifically
contemplated in this provision.  See
Lowery v. Klemm, 446 Mass. 572, 578-579 (2006) ("we will not adopt a
construction of a statute that creates 'absurd or unreasonable'
consequences" [citation omitted]). 
      Given the foregoing, we conclude that the
Serum/Plasma Conversion Report is not the result of an "analysis" as
that term is used in § 24 (1) (e).  No chemical analysis of a physical sample of
blood (or breath) as referenced in the subsection is involved.  Instead, a mathematical equation is used to
convert the serum/plasma ethanol data contained in the defendant's medical records
from one quantifiable measure to another (i.e., from milligrams per deciliter
to a BAC percentage).  That calculation
does not render the information inadmissible under § 24 (1) (e).  
      The defendant claims that this
interpretation of § 24 (1) (e) opens a "backdoor"
around the protections of the subsection previously closed by Moreau and will
force citizens to choose between the right to refuse blood tests and
potentially lifesaving care.  We are not
persuaded.  As our case law has made
clear, § 24 (1) (e) provides specific protections in particular
situations.[5]  The subsection does not
conflict with the admissibility of hospital records or the use thereof by the
prosecution.  In any event, whatever
merit the defendant's policy arguments may have, "it is for the
Legislature to weigh the benefits and drawbacks of the statutory
scheme."  Moreau, 490 Mass. at 395. 
      Conclusion.  The consent provision of G. L.
c. 90, § 24 (1) (e), does not apply to or bar the admission
of a mathematical conversion of a serum/plasma ethanol result reflected in
medical records to a BAC percentage.  We
remand the case to the county court for entry of a judgment consistent with
this opinion. 
So ordered.
 
footnotes
 
[1] Although the
Commonwealth commenced this action by filing a petition in the county court,
for convenience we refer to the respondent as the "defendant."
 
[2] A BAC of .08
percent or greater is over the legal limit and is "per se" evidence
of impairment.  See Commonwealth v.
Colturi, 448 Mass. 809, 810 (2007), citing G. L. c. 90,
§ 24 (1) (a) (1).
 
[3] The forensic
scientist created the Serum/Plasma Conversion Report by applying a mathematical
equation to the defendant's serum/plasma results (292 mg/dL), as reported in
the defendant's medical records, using three different "conversion
factors" (used to account for potential variance in the amount of water in
the defendant's blood).  After completing
this conversion, the forensic scientist concluded that the defendant had a BAC
between 0.247 percent and 0.260 percent, with an average of 0.256 percent.
 
[4] The defendant
also argues that by attempting to introduce BAC evidence from the Serum/Plasma
Conversion Report, the Commonwealth seeks to circumvent the motion judge's
order suppressing "the blood sample and any analysis of the blood sample
by State Police."  This argument
fails.  The defendant has not alleged
that the blood draw, as part of his medical treatment, was improper.  His motion to suppress targeted the fruits of
the execution of the search warrant, that is, the blood samples seized under
the warrant and testing results therefrom. 
As discussed infra, the BAC evidence at issue here came from information
in the defendant's medical records, not from a chemical analysis of the
defendant's blood directed by police. 
And, as the defendant concedes, the medical records were not included in
the motion judge's suppression order.  
 
[5] See, e.g.,
Commonwealth v. Zucchino, 493 Mass. 747, 751 (2024)
(§ 24 [1] [e] does not apply to prosecutions of aggravated OUI
offenses).